TIMOTHY J. SENA & another[1] *vs.* COMMONWEALTH & others.[2]

Hampshire. November 4, 1993. - March 10, 1994.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Police*, Negligence,. Municipality's liability. *Municipal Corporations*, Police, Liability for tort. *Commonwealth*, Officers and employees, Liability for tort. *Civil Rights*, Availability of remedy, Coercion. *Collateral Estoppel. Judgment*, Preclusive effect. *Emotional Distress. Husband and Wife*, Consortium.

In a civil action, the judge properly granted summary judgment for the defendants on claims under G. L. c. 258, §§ 2 and 11, for the Commonwealth's and a town's alleged negligence in conducting a criminal investigation and in pursuing warrants for the plaintiffs' arrest, where the judge correctly ruled the conduct of the defendants' employees (a municipal police officer and a State trooper) in deciding whether and how to prosecute fell within the discretionary functions exception to the Massachusetts Tort Claims Act provided in G. L. c. 258, § 10 (*b*). [254-259]

On claims brought under 42 U.S.C. § 1983 (1988), alleging a violation of the plaintiffs' rights under the Fourth Amendment to the United States Constitution, based on the defendant police officers' having caused the issuance of arrest warrants for the plaintiffs allegedly without probable cause, the judge incorrectly ruled that the plaintiffs were precluded from litigating the issue of probable cause because the judge in the criminal proceeding had determined the issue in favor of the Commonwealth, where, inasmuch as the plaintiffs were acquitted of the criminal charges, the criminal case had afforded the plaintiffs no avenue for appellate review of the probable cause determination as of right. [259-261]

In a civil action, the judge correctly ruled that the facts alleged did not support the plaintiffs' claims under 42 U.S.C. § 1983 (1988) that police officers investigating a criminal matter had violated the plaintiffs'

---

[1]Catherine Rude-Sena.

[2]Town of Carver, James Henderson, and Lawrence Cabeceiras.

Fifth Amendment rights and summary judgment was correctly entered for the defendants. [261]

Summary judgment for the defendants was properly entered on claims under G. L. c. 12, §§ 11H and 11I, for alleged violations of the plaintiffs' civil rights, where the conduct alleged amounting, at the most, to a threat by police officers that they would pursue a criminal investigation of the plaintiffs by lawful means, did not constitute interference by "threats, intimidation or coercion." [261-263]

In a civil action, the alleged conduct of the defendant police officers in obtaining arrest warrants and arresting the plaintiffs, in the course of a criminal investigation that ultimately was resolved by the plaintiffs' acquittal of criminal charges, was not, as a matter of law, extreme and outrageous conduct; summary judgment for the defendants was properly entered on the plaintiffs' claims for intentional infliction of emotional distress. [263-264]

Plaintiffs in a civil action, a husband and wife, who had not alleged viable claims for personal injuries, could not maintain claims for loss of consortium; nor could they maintain such claims ancillary to claims brought under 42 U.S.C. § 1983 (1988): summary judgment was properly entered for the defendants. [264-265]

CIVIL ACTION commenced in the Superior Court Department on January 28, 1988.

The case was heard by *John F. Murphy, Jr.,* J., and *George C. Keady, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David C. Kuzmeski (Harry L. Miles* with him) for the plaintiffs.

*Pamela L. Hunt,* Assistant Attorney General, for the Commonwealth & another.

*Michael K. Callan* for the town of Carver & another.

NOLAN, J. The plaintiffs, Timothy J. Sena and Catherine Rude-Sena, appeal from the entry of summary judgments in favor of the defendants, the Commonwealth, town of Carver, James Henderson, and Lawrence Cabeceiras. We transferred this case to this court on our own motion. The uncontroverted facts follow.

This case arises out of the arrest, prosecution, and acquittal of the plaintiffs on charges of receiving stolen property. In

September, 1981, the plaintiffs purchased a nickel-plated Colt .45 caliber revolver at the Brimfield Flea Market for $1,400. On the walnut grips of the gun were engraved the initials, "W.E.," and on the backstrap was engraved "Wyatt Earp 1879." Thereafter, the plaintiffs spent almost two years and over $10,000 researching the gun's history and authenticating it as a gun actually owned by Wyatt Earp.[3] In July, 1983, the plaintiffs consigned the revolver to a Beverly Hills, California, establishment which advertised it for sale at $350,000.

During their research of the gun's history, the plaintiffs realized that it possibly had been owned by F. Nelson Blount, the deceased owner of Edaville Railroad (Edaville) and a collector of guns. The plaintiffs communicated with Frederick Richardson, the executor of Blount's estate, who advised them that their gun appeared to be one that was stolen from Edaville in 1968. Richardson subsequently wrote to the plaintiffs, advising them that he was "very sure" that theirs was the gun stolen from Edaville.

In January, 1984, after an article written about the plaintiffs and their acquisition was published in a national magazine, George Bartholomew, owner of the Bartholomew Enterprises, Inc., which acquired Edaville in 1970, telephoned the defendant town's police department. Bartholomew thought that the plaintiffs' gun was in fact the one stolen from Edaville in 1968. The police checked their records of the Edaville burglary, but they had no list of what had been stolen. Edaville then supplied them with a list of what had been taken in the 1968 burglary. The list indicated that the following had been stolen: ".45 Colt Birdshead Grip - 7½ [inches] (1879) Wyatt Earp's name engraved on stock." A birdshead grip is significantly different from the "standard" grip of the plaintiffs' pistol.

---

[3]According to folklore, Wyatt Earp, his brothers, Morgan and Virgil, and "Doc" Holliday sent Ike Clanton and his gang to their graves during a shoot-out at the O.K. Corral in Tombstone, Arizona, on October 26, 1881. 9 Encyclopedia Americana 531 (1993).

John Bryden, a long-time employee of Edaville, communicated with the plaintiffs, inquiring about their revolver. Bryden did not disclose to them that he was an employee of Edaville. The plaintiffs sent him a detailed photograph of their gun. On the basis of this photograph, Bryden concluded that the plaintiffs' gun was the same gun that had been on display at Edaville prior to the burglary.

After a lapse of time, Bartholomew complained to one of the town's selectmen about how little he thought the police had been doing to investigate the case. Thereafter, Thomas Orr, chief of police met with the plaintiffs. After the meeting, he concluded that there was some disparity between the plaintiffs' gun and the description of the gun that was stolen. The investigation continued.

The defendants James Henderson, a Carver police officer, and Lawrence Cabeceiras, a State trooper, were assigned to investigate the case further. Henderson and Cabeceiras eventually came to the conclusion that the plaintiffs' revolver was the same gun stolen from Edaville, and they sought warrants for the plaintiffs' arrest. A clerk-magistrate issued the requested warrants. The State police arrested Sena on May 10, 1985, for receiving stolen property. He was confined for approximately twenty-four hours before being released on posting of bail. Rude-Sena thereafter surrendered on May 13. She was confined for a short period before being released on her own recognizance.

Prior to the criminal trial, the plaintiffs moved to dismiss the criminal complaints for lack of probable cause for their arrest. Briefs were submitted by the plaintiffs and the Commonwealth. On April 1, 1985, the motion was denied. Trial began on January 27, 1987, on which day the trial judge denied the plaintiffs' motion for a required finding of not guilty. The plaintiffs were found not guilty on September 15, 1987.

The plaintiffs commenced this action in the Superior Court on January 28, 1988. The complaint included claims for negligence under G. L. c. 258, § 2 (1992 ed.), violations of the plaintiffs' civil rights under 42 U.S.C. § 1983 (1988) and G. L. c. 12, § 11H and 11I (1992 ed.), abuse of process, mali-

cious prosecution, false arrest, false imprisonment, negligent and intentional infliction of emotional distress, and loss of consortium.

After some discovery, the Commonwealth and Cabeceiras moved for summary judgment on April 17, 1990. A Superior Court judge granted their motion. On the plaintiffs' motion for reconsideration, the judge revoked his prior ruling and ordered a motion hearing. On August 27, 1990, the judge reinstated his original ruling, again granting summary judgment in favor of the Commonwealth and Cabeceiras.

On October 15, 1990, the town and Henderson moved for summary judgment. On December 18, 1990, another Superior Court judge granted the motion, adopting the memorandum which had been issued for the motion of the Commonwealth and Cabeceiras. Final judgment was entered on July 22, 1992.

The plaintiffs argue error in granting the town and the Commonwealth summary judgment on their claims for negligence under G. L. c. 258, § 2. As to Henderson and Cabeceiras, the plaintiffs assert error in allowing summary judgment for their claims under 42 U.S.C. § 1983 and G. L. c. 12, § 11H and 11I, and their common law claims of intentional infliction of emotional distress and loss of consortium.

We examine the issues. We are mindful of our obligation to consider the record in a light favorable to the plaintiffs. *Conley* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 168, 173 (1989).

1. *G. L. c. 258, §§ 2 and 11.* In their complaint, the plaintiffs asserted claims against the town and the Commonwealth under G. L. c. 258, the Massachusetts Tort Claims Act, for negligence in their criminal investigation and in pursuing warrants for the plaintiffs' arrest. The motion judge granted summary judgment on these claims, ruling that the conduct of the defendants' employees falls within the discretionary acts exception to the Massachusetts Tort Claims Act provided in G. L. c. 258, § 10 (*b*). The plaintiffs argue error, and assert that the conduct of the police officers in investigating the criminal matter and in pursuing arrest warrants was

ministerial, and therefore actionable. We agree with the trial judge.

Section 2 of G. L. c. 258 provides in part: "Public employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Exempted from liability, however, are claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10 (*b*). We must determine whether the acts of the police officers were "discretionary functions" as to § 10 (*b*).

We have long recognized that c. 258 tracks the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) et seq. (1988) (Federal Act). See *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 142-143 (1992); *Pina* v. *Commonwealth*, 400 Mass. 408, 414 (1987). Thus, in interpreting c. 258, we have found Federal court decisions construing provisions of the Federal Act helpful. See *Harry Stoller & Co.*, *supra* at 142-143. In particular, Federal case law concerning the Federal Act's discretionary functions exception has been a source of general guidance in our examination of § 10 (*b*).[4] *Id.*

Most recently, in *Harry Stoller & Co.* v. *Lowell*, *supra* at 141, we adopted a two-prong inquiry utilized by the United States Supreme Court in *Berkovitz* v. *United States*, 486 U.S. 531, 536 (1988), for determining whether certain conduct falls within the discretionary functions exception. "The first step . . . is to determine whether the governmental actor had any discretion at all as to what course of conduct to fol-

---

[4]The discretionary functions exception of the Federal Act and § 10 (*b*) are worded similarly. Title 28 U.S.C. § 2680 (a) excludes from liability under the Federal Tort Claims Act the following: "Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

low. . . . The second and far more difficult step is to determine whether the discretion that the actor had is that kind of discretion for which § 10 (*b*) provides immunity from liability." *Harry Stoller & Co., supra.* In expanding on the second step, we stated, "Discretionary actions and decisions that warrant immunity must be based on considerations of public policy." *Id.* at 143.

As to the first step of our inquiry, it is obvious in the present case that the government actors — Henderson on behalf of the town and Cabeceiras on behalf of the Commonwealth — had discretion as to what course of conduct to follow. As law enforcement officers, they had to make numerous choices regarding their course of investigation of the plaintiffs' conduct, and regarding whether and when to seek warrants for the plaintiffs' arrest. Thus, they constantly had to rely on their own judgment, based on their experience and their knowledge of the law, to determine what evidence to seek, how to gather that evidence, and whether and when to apply for warrants for arrest. There obviously is no objective scale with which a law enforcement officer can weigh the evidence he accumulates in any particular case to determine whether and when that evidence would support a finding of probable cause. The law, of course, often defines the outer bounds of this determination. Beyond that, however, the officers' decisions constitute quintessential discretion.

The second prong of our inquiry requires that we determine whether the officers' discretion in question "is that kind of discretion for which § 10 (*b*) provides immunity." *Harry Stoller & Co., supra* at 141. We conclude that it is. The decisions of law enforcement officers regarding whether, when, how, and whom to investigate, and whether and when to seek warrants for arrest are based on considerations of, and necessarily affect, public policy. So long as they are within the bounds of the law, and therefore within the officers' discretion, they are public policy decisions. Cf. *Irwin v. Ware,* 392 Mass. 745, 753 (1984) ("No reasonable basis exists for arguing that a police officer is making a policy or planning judgment in deciding whether to remove from the

roadways a driver who he knows is intoxicated. Rather, the policy and planning decision to remove such drivers has already been made by the Legislature"). Thus, we hold that the conduct of law enforcement officials in investigating potentially criminal conduct and in seeking warrants for the arrest of those whom they investigate, are discretionary functions and therefore fall within the exception in § 10 (b).[5]

Our decision is consistent with Federal cases on this issue. Federal courts generally have held that decisions regarding whether, when, how, and whom to investigate or to prosecute are discretionary and fall within the discretionary functions exception. See *K.W. Thompson Tool Co.* v. *United States*, 836 F.2d 721, 729 (1st Cir. 1988) (decision to prosecute plaintiff corporation criminally was a decision "concerning when, whether and whom to prosecute [which has] traditionally been considered discretionary and [has] been held to fall within the discretionary function exception of 28 U.S.C. § 2680[a]"); *Pooler* v. *United States*, 787 F.2d 868, 871 (3d Cir.), cert. denied, 479 U.S. 849 (1986) (police officer's in-

---

[5]We recognize, of course, that certain aspects of the investigatory process may not be characterized as discretionary for purposes of the discretionary functions exception. For example, where the conduct of a defendant police officer in investigating a crime or in seeking a warrant violates officially established departmental procedures, that conduct likely would not be protected. Indeed, as to the first prong of our inquiry, such conduct likely is outside of the officer's discretion; as to the second prong, such conduct likely would not constitute a public policy decision.

We also recognize that an officer who carelessly or recklessly misstates or fails to disclose relevant information he has to a magistrate evaluating a warrant application, and thereby "subvert[s] the integrity of [the warrant process] by 'selling' [the magistrate] 'shoddy merchandise' without appropriate disclaimers," *Commonwealth* v. *Connor*, 392 Mass. 838, 854 (1984), would likely not be engaged in a discretionary activity for purposes of the discretionary functions exception. We need not decide that issue, however, because the pleadings do not fairly raise it. The plaintiffs' c. 258 claim focuses specifically on the officers' alleged negligence in conducting their investigation, alleged negligence in assessing probable cause against the plaintiffs before seeking complaints against them, and alleged negligence in assessing the likelihood that the plaintiffs would appear for arraignment and trial. The pleadings cannot fairly be read as raising the issue of negligence in the officers' actual communication of information to the magistrate.

vestigation and his subsequent decision to file criminal complaints and to apply for arrest warrants, where the charges against the plaintiffs were ultimately dropped, were discretionary acts and therefore not actionable under Federal Act)[6]; *Gray* v. *Bell*, 712 F.2d 490, 514-516 (D.C. Cir. 1983), cert. denied, 465 U.S. 1100 (1984) (decision of the United States Attorney General to prosecute plaintiff, and the alleged improper investigatory conduct, as "inextricably tied" to the decision to prosecute, are discretionary with respect to Federal Act).

Additional factors which we provided in *Whitney* v. *Worcester*, 373 Mass. 208, 219 (1977), further support our conclusion. First, the imposition of tort liability in the present circumstances could "jeopardize the quality and efficiency of the governmental process." *Id.* Tort liability for negligent conduct would likely cause more restrictive investigatory practices, thereby burdening enforcement of the laws. Second, close judicial scrutiny of investigatory practices could "[usurp] the power and responsibility of the legislative or executive branches." *Id.* Continuing judicial criticism of investigatory practices not otherwise unlawful, and therefore within the discretion of law enforcement officials, would impinge on the long-standing domain of the executive branch.

---

[6]The factual background of *Pooler* v. *United States*, 787 F.2d 868 (3d Cir.), cert. denied, 479 U.S. 849 (1986), is analogous to that of the present case. The plaintiffs in *Pooler* were investigated, arrested, and prosecuted for narcotics sales at a Veterans' Administration (VA) Hospital, and the charges against them were ultimately dropped. *Id.* at 869. In their complaints, the plaintiffs alleged, first, that the VA police officer's investigation was deficient, in that the officer unreasonably relied on an informant and failed to corroborate the informant's information, and second, that in pursuing criminal charges against the plaintiffs, the defendant failed to disclose deficiencies in his investigation. *Id.* In holding that the officer's conduct was protected by the discretionary functions exception, the court declared, "[W]hen the sole complaint is addressed, as here, to the quality of the investigation as judged by its outcome, the discretionary function [exception] should, and we hold, does apply. Congress did not intend to provide for judicial review of the quality of investigative efforts." *Id.* at 871. The decision to seek a criminal complaint "is an a fortiori example of a discretionary function." *Id.*

The injury suffered by the plaintiffs — embarrassment, inconvenience, and pecuniary expense — while not insubstantial, cannot be wholly unexpected in our unavoidably imperfect system of law enforcement. Unfortunately, to maintain the effective enforcement of our laws, the citizens of this Commonwealth must sustain the risk of being wrongly accused, since in many cases, the propriety of a prosecution ultimately can be determined only by a verdict of guilty or not guilty. Here, the plaintiffs were found not guilty.

There was no error in the motion judge's determination that the conduct of Henderson and Cabeceiras falls within the discretionary functions exception of G. L. c. 258, § 10 (*b*).

2. *42 U.S.C. § 1983.* The plaintiffs asserted claims against the individual defendants pursuant to 42 U.S.C. § 1983, alleging violations of their rights protected by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The motion judge granted summary judgment on these claims in favor of the defendants. The plaintiffs appeal from the judge's determinations made with respect to the Fourth and Fifth Amendments.

a. *The Fourth Amendment.* In their complaint, the plaintiffs alleged that the warrants issued for their arrest were not supported by probable cause. The judge, in granting summary judgment in favor of the defendants, ruled that, because the issue of the existence of probable cause was raised in the criminal proceeding and was considered and determined by the judge in favor of the Commonwealth, the plaintiffs were collaterally estopped from relitigating the issue in the civil action. The plaintiffs argue error in the judge's ruling. We agree.

To start, we recognize that arrests made absent probable cause may warrant relief under § 1983. See *Wagenmann* v. *Adams*, 829 F.2d 196, 205-206 (1st Cir. 1987). We also acknowledge that the doctrine of collateral estoppel, or issue preclusion, is not generally barred from application in § 1983 actions. See *Allen* v. *McCurry*, 449 U.S. 90, 103-105 (1980). Thus, we must determine whether application of that

doctrine in the circumstances of the present case is otherwise appropriate.

The doctrine of collateral estoppel precludes relitigation of issues determined in prior actions between the parties or those in privity with the parties. See *Massachusetts Property Ins. Underwriting Ass'n* v. *Norrington*, 395 Mass. 751, 753 (1985). Issues precluded under this doctrine must have been actually litigated in the first action, *Aetna Casualty & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 742 (1985), and determined by a "final judgment on the merits." *Massachusetts Property Ins. Underwriting Ass'n, supra.* See *Commonwealth* v. *Scala*, 380 Mass. 500, 506 (1980); Restatement (Second) of Judgments § 27 (1982). We have implied that for a decision to be final it must have been subject to appeal or actually reviewed on appeal. See *Aetna Casualty & Sur. Co., supra* at 745 ("We see no unfairness in authorizing the offensive use of collateral estoppel in cases like this one . . . . [The defendant] had every incentive to defend the prosecution vigorously . . . and to take an appeal, which he did"); *Commonwealth* v. *Scala, supra* at 506 ("the prerequisite of an appeal as of right is not satisfied here"). We now state conclusively that for collateral estoppel to preclude litigation of an issue, there must have been available some avenue for review of the prior ruling on the issue.[7]

In the present case, there was no avenue for review of the criminal court ruling on the plaintiffs' motion to dismiss for lack of probable cause. The denial of their motion to dismiss was not subject to interlocutory appeal, G. L. c. 278, § 28E (1992 ed.), and because the trial concluded with the plaintiffs' acquittal, there was no other means available to review the ruling for error. Thus, the issue of the existence of proba-

---

[7]This rule comports with Restatement (Second) of Judgments § 28 (1982), which states in part: "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded [where] [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action . . . ."

ble cause to support the plaintiffs' arrest is not precluded under the doctrine of collateral estoppel from being litigated in the present case.

We must therefore reverse the allowance of summary judgment as to that portion of the plaintiffs' § 1983 claim concerning the Fourth Amendment, and remand this case for further proceedings.[8]

b. *The Fifth Amendment.* The plaintiffs allege that the individual defendants, at one point during their investigation, visited the plaintiffs at their home and requested to examine their revolver. Although the plaintiffs openly admitted ownership and possession of their gun and were willing to discuss the gun, they refused to produce it at that time. The plaintiffs now assert that these defendants' subsequent pursuit of warrants for their arrest was intended as punishment for their refusal to produce the gun, and is conduct violative of § 1983. The motion judge, in granting summary judgment on this claim, noted that the facts alleged cannot support a claim under § 1983. We agree.

Courts have held that § 1983 may provide relief where an individual is punished for assertion of a constitutional right. See *Hardwick* v. *Hurley*, 289 F.2d 529 (7th Cir. 1961) (defendant police officers beat plaintiff for refusing to incriminate himself by taking breath test). Here, the plaintiffs were not punished; the defendants merely continued their investigation and applied for warrants for the plaintiffs' arrest. The plaintiffs have referred to no authority to support their contention that such conduct is actionable with respect to § 1983. The judge's ruling stands.

3. *G. L. c. 12, §§ 11H and 11I.* The plaintiffs asserted claims against Henderson and Cabeceiras under G. L. c. 12, §§ 11H and 11I, the Massachusetts civil rights statute. The Superior Court judge granted summary judgment in favor of the defendants on these claims, ruling that the defendants'

---

[8]The defendants also raised the issue of qualified immunity. We are unable to consider this issue on the record submitted to us on appeal.

alleged conduct is not actionable under §§ 11H and 11I. We agree that summary judgment was appropriate.

Sections 11H and 11I provide a cause of action for individuals whose rights under the Constitution and laws of the United States or the Commonwealth have been interfered with, or attempted to be interfered with, by threats, intimidation, or coercion. G. L. c. 12, §§ 11H and 11I.[9] Section 11I was intended to provide a remedy coextensive with 42 U.S.C. § 1983. *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 822-823 (1985). The State statute, however, unlike its Federal counterpart, does not require State action. Further, whereas § 1983 provides relief for direct violations of one's rights, relief under § 11I is available only where one's rights are interfered with or attempted to be interfered with by threats, intimidation, or coercion. We now examine the defendants' alleged conduct.

The plaintiffs again allege that, during the criminal investigation, the defendant officers interviewed them at their home. At the time, the officers had neither an arrest warrant nor a search warrant. During the meeting, the officers "demanded" that the plaintiffs produce their gun for inspection. The plaintiffs refused, but tried to arrange for a future meeting at which they would produce the gun for observation and where they would be accompanied by counsel. In response, the officers announced that the meeting was over, and alleg-

---

[9]General Laws c. 12, § 11H (1992 ed.), provides in relevant part: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action . . . ."

Section 11I provides a private remedy for such conduct: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages." G. L. c. 12, § 11I (1992 ed.).

edly stated that the next time the plaintiffs saw them, they would "have warrants."

The officers' statement that they would have warrants the next time the plaintiffs saw them could be considered a threat. See *Willitts* v. *Roman Catholic Archbishop of Boston*, 411 Mass. 202, 210 n.10 (1991).[10] However, at most, what implicitly is threatened is the plaintiffs' arrest through lawful means. Generally, by itself, a threat to use lawful means to reach an intended result is not actionable under § 11I. See *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 782 (1987). We therefore conclude on the basis of the plaintiffs' allegations that the officers' alleged conduct is not actionable under § 11I.

Accordingly, we affirm the allowance of summary judgment as to the plaintiffs' claims under G. L. c. 12, §§ 11H and 11I.

4. *Intentional infliction of emotional distress.* The plaintiffs argue error in the trial judge's granting of summary judgment in favor of Henderson and Cabeceiras on the plaintiffs' claims for intentional infliction of emotional distress. There is no error.

The plaintiffs allege that the defendants' conduct, in obtaining arrest warrants and in subsequently arresting the plaintiffs, was extreme and outrageous conduct which was intended to, and did, result in severe emotional distress to the plaintiffs. The trial judge, in granting summary judgment in favor of the defendants, ruled that the alleged conduct was, as a matter of law, not extreme and outrageous. We examine this ruling.

To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct

---

[10]In *Willitts* v. *Roman Catholic Archbishop of Boston*, 411 Mass. 202, 210 n.10 (1991), we cited *Delaney* v. *Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989), which defined " 'threat' as 'acts or language by which another is placed in fear of injury or damage,' 'intimidation' as 'creation of fear to compel conduct,' and 'coercion' as 'the active domination of another's will.' "

would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress. *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976), and cases cited. To be considered extreme and outrageous, the defendant's conduct must be "beyond all bounds of decency and . . . utterly intolerable in a civilized community." *Id.* at 145, quoting Restatement (Second) of Torts § 46 comment d (1965). Liability cannot be founded upon mere insults, threats, or annoyances. *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 99 (1987).

The conduct of which the plaintiffs complain as a matter of law cannot be deemed extreme and outrageous. Neither applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered "utterly intolerable in a civilized community." *Agis*, *supra* at 145.

5. *Loss of consortium.* The plaintiffs also asserted claims against Henderson and Cabeceiras for loss of consortium. Summary judgment for these claims was allowed in favor of the defendants. The plaintiffs again argue error. There is no error.

As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury. See *Agis*, *supra* at 146-147; *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 161-168 (1973); *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538, 543-544 (1987). See also W. P. Prosser & R. E. Keeton, Torts § 125, at 931-934 (5th ed. 1984). Although we have determined that a claim for loss of consortium is independent of the spouse's cause of action, see, e.g., *Feltch* v. *General Rental Co.*, 383 Mass. 603, 607-608 (1981), we have not repudiated the implicit prerequisite that the injured spouse have a viable claim.

As discussed above, in the present case, neither plaintiff has a viable claim for personal injury. As to the claims under 42 U.S.C. § 1983, "[t]he spouse of an alleged federal civil rights victim is not permitted an ancillary cause of action for loss of consortium." *Tauriac* v. *Polaroid Corp.*, 716 F. Supp.

672, 673 (D. Mass. 1989), and cases cited. Thus, the plaintiffs' claims for loss of consortium fail.

6. *Conclusion.* Accordingly, we hold that the Superior Court judge erred in allowing summary judgment in favor of Henderson and Cabeceiras as to the plaintiffs' claims under 42 U.S.C. § 1983, for infringement of their Fourth Amendment rights. There is no error as to the claims under G. L. c. 258, §§ 2 and 11; G. L. c. 12, §§ 11H and 11I; and 42 U.S.C. § 1983, as to the Fifth Amendment; and the plaintiffs' common law claims for intentional infliction of emotional distress and loss of consortium. We remand for further proceedings in accordance with this opinion.

*So ordered.*