USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 98-2033
 IN RE: JOSEPHINE STRANGIE,
 Debtor,
 

 SMITH BARNEY, INC., F/K/A SMITH BARNEY,
 HARRIS UPHAM & COMPANY, INC.,

 Appellant,

 v.

 JOSEPHINE STRANGIE,

 Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]

 

 Before

 Selya, Circuit Judge,

 Cyr, Senior Circuit Judge,

 and Lipez, Circuit Judge.

 

 Richard W. Gannett, with whom Gannett & Associates was on brief
for appellant.
 John F. Davis, with whom Boudreau, Mitchell & Davis was on brief
for appellee.

 

 September 30, 1999
 CYR, Senior Circuit Judge. Smith Barney, Inc. ("Smith
Barney") challenges a district court order which rejected its
intermediate appeal from a bankruptcy court order which dismissed
its adversary proceeding contesting the dischargeability of a
$272,596 state court judgment obtained by Smith Barney against
chapter 7 debtor Josephine Strangie. We affirm.
 I
 BACKGROUND
 Anthony Strangie incorporated Mystic Valley Financial
Corporation ("Mystic Valley") in 1989, designating himself and
Josephine Strangie, his wife, as its only officers and directors. 
Josephine played no significant role in the operation of Mystic
Valley, other than as corporate clerk and a designated signatory on
the corporate checking account. Although there is no evidence that
Josephine ever signed corporate checks, she acknowledged filling in
dates, payee names, and amounts on some corporate checks, always in
strict accordance with her husband's explicit directions. She had
no personal knowledge regarding Mystic Valley's assets or account
balances; and all corporate checks, including those filled in by
Josephine pursuant to her husband's direction, were signed by
Anthony Strangie alone.
 In June 1991, Anthony Strangie directed Smith Barney to
purchase securities on the Mystic Valley securities account at a
cost of $89,376. After considerable procrastination, Anthony sent
Smith Barney a Mystic Valley check, drawn and signed by him. Not
only was the check issued without sufficient funds, but Anthony
immediately stopped payment on it as well.
 The following year, Smith Barney obtained a Florida state
court judgment for $272,596 against Mystic Valley. Thereafter, it
brought suit against Mystic Valley and the Strangies in a
Massachusetts state court for the purpose of enforcing its Florida
judgment. While the Massachusetts action remained pending, Anthony
Strangie died. Shortly thereafter the Massachusetts court
conditionally allowed Josephine Strangie's counsel to withdraw from
the case.
 Five months later, Smith Barney moved for summary
judgment on the ground that the Mystic Valley corporate veil should
be pierced so as to allow the Florida judgment to be enforced
against Josephine. Smith Barney maintained that Josephine had
disregarded corporate formalities, commingled corporate and
personal assets, diverted Mystic Valley assets to personal
purposes, and fraudulently misused the corporate form to induce
Smith Barney to transact business with Mystic Valley. Absent
opposition to the motion, the Massachusetts state court directed
summary judgment for Smith Barney by endorsement on August 26,
1996.
 After Josephine Strangie filed her chapter 7 petition,
Smith Barney initiated an adversary proceeding in the bankruptcy
court, claiming that her fraudulent misuse of the corporate form
had rendered the $272,596 judgment nondischargeable. See
Bankruptcy Code 523(a)(2), (a)(4), (a)(6); 11 U.S.C. 
523(a)(2), (a)(4), (a)(6). Shortly after trial began before the
bankruptcy court, Smith Barney filed a motion in limine contending
that the default judgment obtained in Massachusetts state court on
August 26, 1996, collaterally estopped Josephine from relitigating
whether the Mystic Valley corporate form should be disregarded,
thereby necessitating a determination that the default judgment
obtained by Smith Barney was nondischargeable under Bankruptcy Code
 523.
 Although the bankruptcy court denied the motion in
limine, it invited Smith Barney to adduce evidence as to (i)
whether Josephine had been sufficiently active in Mystic Valley to
warrant piercing the corporate veil, and (ii) whether her conduct
constituted sufficient grounds for determining that the Smith
Barney debt was nondischargeable. At that point, Smith Barney
briefly called Josephine to the stand, then rested its case. In
due course, the bankruptcy court entered judgment for Josephine. 
Following an unsuccessful intermediate appeal to the district
court, Smith Barney brought the instant appeal.
 II
 DISCUSSION
 A. The Motion in Limine
 First, Smith Barney contends that the bankruptcy court
abused its discretion by denying the motion in limine. Under
Massachusetts law, "collateral estoppel precludes relitigation of
issues determined in prior actions between the parties or those in
privity with the parties, [provided the issues were] actually
litigated in the first action, and determined by a 'final judgment
on the merits.'" Sena v. Commonwealth, 629 N.E.2d 986, 992 (Mass.
1994) (citations omitted). The bankruptcy court determined that
the apparent withdrawal of Josephine Strangie's counsel five
months before the 1996 default judgment was entered had
confounded any "actual litigation" of the corporate-veil-piercing
issue, and alternatively that the order allowing Smith Barney's
motion for summary judgment did not qualify as a "final judgment." 
As we agree with the latter ruling, we do not address the former.
 Although the state court allowed the motion for summary
judgment by margin endorsement in August 1996, there has been no
showing that its endorsement was ever reduced to judgment. 
Furthermore, the motion for summary judgment named only Josephine
Strangie, who was but one of three defendants in the case. Smith
Barney neither contends, nor has it demonstrated, that its claims
against Mystic Valley and the Estate of Anthony Strangie were no
longer pending, nor that Smith Barney ever sought to certify the
interlocutory partial summary judgment against Josephine Strangie
as "final," pursuant to Mass. R. Civ. P. 54(b). Thus, the state-
court default judgment against Josephine Strangie presently remains
nonappealable.
 Under Massachusetts law, collateral estoppel normally is
not triggered by a nonappealable judgment. See Sena, 629 N.E.2d at
992; Tausevich v. Board of Appeals of Stoughton, 521 N.E.2d 385,
387 (Mass. 1988) (holding that partial summary judgment "[not]
entered under Mass. R. Civ. P. 54(b)" has no res judicata effect). 
Since the state court judgment against Josephine was interlocutory,
see Mass. R. Civ. P. 54(b) ("[T]he order or other form of decision
is subject to revision at any time . . . ."), the bankruptcy court
correctly rejected Smith Barney's motion in limine.
 B. Piercing the Corporate Veil

 Next, Smith Barney argues that it was clear error for the
bankruptcy court to reject its evidence of Josephine's fraudulent
intent and to refuse either to pierce the corporate veil or declare
the judgment debt nondischargeable. We do not agree.
 First, Smith Barney acknowledged before the bankruptcy
court that it filed its adversary proceeding based solely on its
assumption that its pretrial motion in limine would prevail, and
that the collateral estoppel doctrine would obviate the need to
present evidence before the bankruptcy court that the Mystic Valley
corporate veil should be pierced at Josephine's expense. In other
words, Smith Barney sought to capitalize on the partial summary
judgment allowed by endorsement in the state court proceeding, even
though the endorsement resulted solely from Josephine's procedural
default, rather than from any ruling on the merits. Smith Barney
thereby would be spared the difficult task of establishing that in
these circumstances Josephine should be found personally liable for
the Mystic Valley judgment debt. Thus, it is not surprising that
after the court denied the in limine motion, Smith Barney managed
only a lame attempt to demonstrate to the bankruptcy court that
Josephine should be held personally liable.
 Second, Smith Barney appears to assume that any evidence
that Josephine Strangie fraudulently misused the corporate form
would serve not only to subject her to personal liability for
Mystic Valley's debts, but also render nondischargeable any debt
she owed Smith Barney pursuant to Bankruptcy Code 523(a)(2)
(obtaining property by materially false statement in writing);
(a)(4) (fraud); (a)(6) (willful or malicious injury). Since we
affirm the bankruptcy court's finding that Smith Barney failed to
establish that it may pierce the corporate veil, there is no need
to address its section 523(a) claims inasmuch as Josephine
obviously has no need for a bankruptcy discharge in relation to
obligations for which she was never liable.
 Finally, Smith Barney expressly endorsed the "corporate
veil piercing" standards set out in My Bread Baking Co. v.
Cumberland Farms, Inc., 233 N.E.2d 748 (Mass. 1968): "A . . .
person controlling a corporation and directing, or participating
actively in its operations may become subject to civil or criminal
liability on principles of agency or of causation, . . . where
[the] corporation[] [was] formed, or availed of, to carry out the
objectives and purposes of the . . . persons controlling them." 
Id. at 751 (emphasis added.) Essentially, Smith Barney's theory
was that the close relationship between Anthony and Josephine, and
their persistent disregard of Mystic Valley's corporate form,
established that they jointly "use[d] . . . the corporation in
promoting fraud." Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.,
754 F.2d 10, 16 (1st Cir. 1985).
 Smith Barney sought to show that Anthony Strangie used
Mystic Valley funds for personal purposes. Thus, as Anthony's
spouse, Josephine may well have derived coincidental personal
benefit from some of those diversions. What Smith Barney failed to
demonstrate, however, is that Josephine directly and knowingly
participated in any alleged diversion. Rather, the only evidence
Smith Barney adduced was that Josephine performed minor ministerial
tasks, by occasionally driving her husband to the bank to make
deposits in corporate accounts, and by filling out the date, payee
name, and amount spaces on some corporate checks at Anthony's
specific direction. Moreover, she testified unequivocally and
without evidentiary contradiction that she was never involved in or
privy to the corporate business, which was handled by her husband
on his own. Thus, Smith Barney's citation to Pepsi-Cola Metro.
Bottling Co., 754 F.2d 10, is unavailing. There the wife did more
than passively receive joint benefit from the diversions effected
by the husband. She signed corporate checks. So it fairly could
be said that she actively diverted corporate funds to her personal
use. See id. at 16. Josephine testified, in this case, without
contradiction, that she signed no corporate checks.
 III
 CONCLUSION
 Accordingly, viewed in light of the entire record on
appeal, we conclude that Smith Barney has not demonstrated "clear
error" in the bankruptcy court's determination that the corporate
form should be respected. See Crane v. Green & Freedman Baking
Co., 134 F.3d 17, 22 (1st Cir. 1998) (noting that whether to pierce
corporate veil is a factual issue, which turns on an examination of
the totality of the circumstances). As the factfinder, the
bankruptcy court was entitled to make reasonable credibility
determinations, see Brandt v. Repco Printers & Lithographics, Inc.
(In re Healthco Int'l, Inc.), 132 F.3d 104, 108 (1st Cir. 1997),
and "[w]here there are two permissible views of the evidence, the
factfinder's choice between them cannot be clearly erroneous," 
Palmacci v. Umpierrez, 121 F.3d 781, 790 (1st Cir. 1997) (citation
omitted).
 Affirmed; costs to appellee.