**Jamal DALEY and Samia Vigne, Plaintiffs,**

v.

**John Michael HARBER and City of Boston, Defendants.**

**No. 01–CV–11179–MEL.**

United States District Court, D. Massachusetts.

Oct. 15, 2002.

---

Valeriano Diviacchi, Diviacchi Law Office, Boston, MA, for Plaintiffs.

Charles K. Lyons, Lyons and Procida, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

LASKER, District Judge.

Jamal Daley and Samia Vigne sue Boston police officer Jon Michael Harber and the City of Boston for depriving Daley of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §§ 1983 and 1988; violation of the Massachusetts Civil Rights Act; false imprisonment; intentional infliction of emotional distress; and assault and battery. They also sue the City of Boston for negligence under the Massachusetts Tort Claims Act, M.G.L. ch. 258. Defendants move for summary judgment. Plaintiffs cross-move for summary judgment as to liability.

Defendants' motion for summary judgment is denied in part and granted in part. Plaintiff's cross-motion for summary judgment as to liability is denied in part and granted in part.

### I. Background

Daley and Vigne are cousins. Their action concerns the arrest of Daley for possession of a motorcycle owned by Vigne, and their subsequent loss of the use and enjoyment of the vehicle while it remained in storage for several months after the criminal charges against Daley (described below) were dismissed.

The parties agree, for the most part, on the events in question. On July 22, 2000, Harber was on routine patrol in a marked police cruiser in Dorchester. Daley was on private property in front of his house accompanied by his uncle, Michael Daley. A 2000 Yamaha dirt bike style motorcycle, without a license plate, was parked on the property in plain view. Officer Harber stopped in front of the house, approached Daley, and asked him who owned the motorcycle. Daley responded that he was in lawful possession of the motorcycle (the exact wording of his response is in dispute, with Daley claiming that he said his cousin owned the motorcycle, and Harber claiming that Daley said he himself owned it). Harber and Daley's uncle began to argue. Harber called for backup, and six to eight cruisers arrived.

After the arrival of the additional officers, Daley was once again asked about the motorcycle's ownership. He repeated that he (or, according to Daley's account, his cousin) owned the motorcycle and offered to retrieve paperwork from inside the house showing ownership of the vehicle. He was told by the officers, however, that he was not permitted to leave the scene.

Daley then volunteered to let the officers look up the motorcycle's vehicle identification number (VIN). Harber and another officer entered the number into the Mobile Data Terminal (MDT) in Harber's cruiser. The MDT appeared to indicate that no motorcycle of that description had

been reported stolen. Shortly thereafter, all of the officers drove away. A few minutes later, Harber realized that he had neglected to view the fourth of four screens provided by the MDT. The fourth screen reported that a motorcycle matching the description, but with a VIN that differed by six letters, had been reported stolen in Denver, Colorado.

Harber and the other officers then returned to the house. They entered the VIN into the MDT several times, and each time the fourth screen reported a motorcycle stolen out of Denver, with the same discrepancy in the VIN. Harber then checked the VIN over the police radio through the police station's main computer, and received the same result.

Harber placed Daley under arrest for receiving a stolen motor vehicle, handcuffed him, and called to have the motorcycle towed. Daley was held at the police station for several hours and then released on personal recognizance. The criminal case against him was dismissed after Daley presented evidence that the motorcycle was not stolen. It took eleven months for Vigne to obtain documentation from the police sufficient to secure the release of the motorcycle. Plaintiffs allege that in addition to losing the use and enjoyment of the motorcycle for those months, Vigne lost time off from work and incurred costs in attempting to get the motorcycle released.

## II.

There are no genuine issues of material fact to preclude a grant of summary judgment. Although the parties disagree whether Daley said that he himself owned the motorcycle or that his cousin did, and whether Harber entered several different VINs into the computer or the same VIN several times, no claim or defense rests on these facts.

### Count I: Federal Civil Rights

Defendants argue that Harber is entitled to qualified immunity from Daley's claim under 42 U.S.C. §§ 1983 and 1988 because he was performing a discretionary function and his conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *See Vargas–Badillo v. Diaz–Torres,* 114 F.3d 3, 5 (1st Cir.1997) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In defense of Harber's actions, defendants cite the fact that Harber had pulled over two motorcycles, of similar style, without license plates, within the previous two months in the same area, both of which were stolen; that Daley lacked paperwork to show that he owned the motorcycle; that Daley's uncle became confrontational with Harber; and that a motorcycle of similar description with a VIN differing by six letters was reported stolen out of Denver.

Plaintiffs respond that Harber's prior experience with stolen motorcycles in the neighborhood bears no relationship to Daley and should not be taken into account in assessing probable cause. They further argue that the VIN of Daley's motorcycle, JYA3UL309YA002053, was not reported stolen anywhere in the country; that a VIN differing by six letters is completely distinct; and that a report of a motorcycle stolen 2000 miles away with a completely distinct VIN is no basis for probable cause. Finally, they note that Harber refused to allow Daley to go inside the house to get the paperwork showing the motorcycle's ownership.

 Harber's motion for summary judgment on Count I is denied. Although the qualified immunity standard is "not a stringent test," *Rivera v. Murphy,* 979

F.2d 259, 263 (1st Cir.1992), Harber has failed to meet it. Harber has not shown that the facts and circumstances "were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Vargas–Badillo,* 114 F.3d at 6 (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). The motorcycle had not been reported stolen. Daley offered to provide paperwork showing ownership of the motorcycle. (Whether he claimed that he owned it or that his cousin owned it is immaterial; in either case, he was in lawful possession of the motorcycle and offered to prove it.) The fact that others in the neighborhood may have been found to be in possession of stolen motorcycles has no bearing on Daley's case.

Plaintiffs' cross-motion for summary judgment on Count I on liability is granted with regard to Harber.

■ The City of Boston's motion for summary judgment on Count I is granted, and plaintiffs' cross-motion for summary judgment on liability is denied as to the City of Boston. The City of Boston may be held liable for violation of Daley's civil rights only if plaintiffs' establish that the practices at issue constituted a municipal policy or custom. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants have not raised *Monell* as a defense to municipal liability. However, plaintiffs have not alleged a policy or custom, and the City of Boston is thus entitled to a judgment as a matter of law on this count. This disposition is without prejudice to the filing of an amended complaint stating a claim for municipal liability.

*Count II: Massachusetts Civil Rights Act*

Defendants assert that relief under the MCRA, M.G.L. ch. 12, §§ 11H and 11I, is available "only where one's rights are interfered with or attempted to be interfered with by threats, intimidation, or coercion," *Sena v. Commonwealth,* 417 Mass. 250, 262, 629 N.E.2d 986 (1994), and that plaintiffs have failed to establish threats, intimidation, or coercion. They assert that Harber's conduct throughout the encounter with Daley was calm and civil and included no threats, intimidation or coercion. They further argue that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." *Longval v. Commissioner of Correction,* 404 Mass. 325, 333, 535 N.E.2d 588 (1989).

■ Plaintiffs respond that false arrest has been specifically recognized as a basis for a claim under the MCRA. *See Santiago v. Fenton,* 891 F.2d 373, 383 (1st Cir.1989) ("If there was no probable cause for [plaintiff's] arrest, he can seek redress under . . . [the MCRA].") They further argue that a direct physical restraint such as an arrest is in itself "intimidation and coercion" for purposes of the MCRA, and distinguish *Sena* from the instant case, noting that *Sena* concerned a threat to seek an arrest warrant, and that the court held that "a threat to use lawful means to reach an intended result is not actionable under [the MCRA]". *Sena,* 417 Mass. at 263, 629 N.E.2d 986. They argue that here, in contrast, Harber is accused not of using lawful means but of coercing Daley through the unlawful arrest itself; the absence of probable cause constitutes a clear violation of Daley's Fourth Amendment rights.

Plaintiffs note that in *Planned Parenthood v. Blake,* 417 Mass. 467, 631 N.E.2d 985 (1994), the Supreme Judicial Court significantly narrowed its holding in *Longval* and rejected precisely the "direct violation" argument that defendants offer:

[Longval] involved direct action against the plaintiff which 'by itself' did not amount to a violation of the MCRA. If, however, direct action also includes threats against, or intimidation or coercion of, a particular individual or individuals, liability under the MCRA can be established, and will be established if such threats, intimidation, or coercion interfered with that individual's exercise of or enjoyment of rights secured by law.

*Planned Parenthood,* 417 Mass. at 473, 631 N.E.2d 985.

For the reasons cited by plaintiffs, defendants' motion for summary judgment as to the MCRA claim is denied, and plaintiffs' cross-motion for summary judgment on liability is granted. Harber's actions constituted coercion for the purposes of the MCRA, and defendants' "direct violation" argument is not persuasive in light of the Supreme Judicial Court's holding in *Planned Parenthood.*

### Count III: False Imprisonment

■ Harber's motion for summary judgment as to false imprisonment is denied. Plaintiffs' motion for summary judgment as to liability on this count is granted with regard to Harber. Because there was no probable cause for Daley's arrest, it follows that Harber's actions constituted false imprisonment as a matter of law. *See Ortiz v. Hampden County,* 16 Mass. App.Ct. 138, 449 N.E.2d 1227 (1983) (false imprisonment consists of unlawful confinement by force or threat).

As we read the complaint, plaintiff has not stated a claim against the City of Boston on this count.

### Count IV: Intentional Infliction of Emotional Distress

■ To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress. Defendants argue that Harber's conduct was not extreme or outrageous because it was not "beyond the bounds of decency and utterly intolerable in a civilized community." *Sena v. Commonwealth,* 417 Mass. 250, 262, 629 N.E.2d 986.

Harber's motion for summary judgment on this count is denied. Plaintiffs' motion for summary judgment as to liability on this count is also denied. The record is not sufficiently developed at this time to enable a determination as to whether plaintiffs' claim meets the requirements for intentional infliction of emotional distress.

As we read the complaint, plaintiff has not stated a claim against the City of Boston on this count.

### Count V: Assault and Battery

Harber's motion for summary judgment is denied. Plaintiffs' motion for summary judgment on liability is granted with regard to Harber. Because there was no probable cause for Daley's arrest, we find that Harber's actions constituted assault and battery as a matter of law. *See Moore v. Eli Lilly & Co.,* 626 F.Supp. 365, 367 (D.Mass.1986) (battery consists of intentional act by defendant, without consent of plaintiff, resulting in offensive touching).

As we read the complaint, plaintiff has not stated a claim against the City of Boston on this count.

### Count VI: Massachusetts Torts Claims Act

■ The City of Boston argues that it is immune from suit under the MTCA for

Harber's actions because M.G.L. Ch. 258 § 10(b) exempts claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." The City points to *Sena v. Commonwealth,* noted above, which held that "officers' decisions [regarding investigations and arrests] constitute quintessential discretion" and that these decisions "are based on considerations of, and necessarily affect, public policy." 417 Mass. 250, 256, 629 N.E.2d 986 (1994).

The City of Boston's motion for summary judgment is denied. I find the City's reliance on *Sena* misplaced. The *Sena* court held that decisions to investigate and arrest are public policy decisions and within the officer's discretion "[s]o long as they are within the bounds of law." *Sena,* 417 Mass. at 256, 629 N.E.2d 986. If an arrest is unlawful, there is no reason for it to be considered discretionary, and thus no basis for immunity from suit under the MTCA.

Plaintiffs' cross-motion as to liability is denied. The record is not sufficiently developed at this time to allow a determination as to liability under the MTCA.

It is so ordered.