Burnes, Nonnie S., J.
On November 30, 2004, Plaintiff, Barry Fiske (“Fiske”), brought this action against the Town of North Attleboro (“Town”) and Police Chief Michael Gould, Detective John Reilly, Sergeant David Dawes, SergeantBrian Coyle, and Town Administrator Jay Moynihan (“the individual defendants”), seeking damages for injury arising from the defendants’ initiation of criminal proceedings against him. The defendants now move to dismiss under Mass.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and under G.L.c. 231, §59H, the Massachusetts anti-SLAPP statute and for summary judgment under Mass.R.Civ.P. 56(b). For the reasons discussed below, the defendants’ motion to dismiss is DENIED, and the defendants’ motion for summary judgment is ALLOWED IN PART and DENIED IN PART.

BACKGROUND

At this summary judgment stage, the facts are reported in the light most favorable to the non-moving party, Fiske. Anderson Street Associates v. City of Boston, 442 Mass. 812, 816 (2004).
In June of 1998, the North Attleboro Town Hall was left without air conditioning when two compressors in the air conditioning system broke down. When the Town solicited bids for either the replacement or the repair of the broken compressors, Siebe Environmental Controls ENE, Inc. (“Siebe”)[2] submitted a bid to install two “new”[3] Copeland compressors with five-year warranties. The Town awarded Siebe the contract. Fiske, the Vice President of Siebe, signed the contract on Siebe’s behalf. Fiske had not been involved in negotiating the terms of the proposal.
Near the end of June of 2000, both of the “new” Siebe compressors failed, again leaving the North Attleboro Town Hall without air conditioning in the summer heat. After inspecting the Siebe compressors,' Daniel Pacussi (“Pacussi”) of BEST, Inc., the Town’s then HVAC vendor, advised defendant Jay Moynihan (“Moynihan"), the town administrator, that both compressors required replacement.
According to the defendants, Gregory Barnes (“Barnes”), Moynihan’s assistant, told Pacussi that the broken compressors were under warranty. Pacussi called the nearest Copeland compressor distributor and provided it with the serial numbers taken from the disabled compressors. The distributor told Pacussi that they had no warranty information matching those serial numbers. Pacussi then called Diane Buckley of Siebe and asked from which Copeland distributor the compressors were purchased, because he was attempting to locate the warranty information. Buckley replied that the information he sought was currently unavailable because Siebe was in the process of moving and had boxed up all information pertaining to the contract. Pacussi was never able to determine if the warranties existed. (Fiske says they did exist.)
The defendants claim that when Police Chief Michael Gould (“Chief Gould”) learned of the situation, he told Sergeant David Dawes (“Sgt. Dawes”), an assistant police prosecutor, to meet with Barnes and initiate an investigation. The defendants claim that, eventually, the police concluded that the compressors were not “new” when they were purchased and that the five-year warranties did not exist. From this, they say they believed that Fiske had committed larceny by false pretenses.
On July 14, 2000, Detective John Reilly (“Det. Reilly”) contacted Fiske on the telephone. When Fiske asked if there was a problem with the compressors, Det. Reilly replied, “You bet there is a problem. If we find out that you installed used or rebuilt compressors in our town hall, we’re charging you criminally.” Fiske responded, “Detective Reilly, if there’s a problem, I’m more than glad to work with you, but this sounds like a civil matter, not a criminal matter. Please don’t threaten me.” Fiske agreed to look into the matter and get back to Det. Reilly. Later that day, Fiske telephoned Det. Reilly and arranged a meeting to discuss the matter.
The meeting took place on July 17, 2000 at the North Attleboro Police Department, where Fiske and Phil Smith (“Smith”), a service operations manager for Siebe, met with Det. Reilly and Sgt. Dawes. At the start of the meeting, Sgt. Dawes told Fiske that he had committed larceny by false pretenses. Fiske replied, “Officers, you know, this sounds like a civil matter to me, and I’m more than glad — I’m vice president of the company. I’m responsible for the actions of the company. I’m more than glad to discuss this matter with you, but please don’t threaten me with criminal *244 charges.” At the meeting’s conclusion, Det. Reilly told Fiske that to resolve the matter, Fiske would need to speak with Moynihan, so Fiske and Smith left the police station and met with Moynihan at the Town Hall. Moynihan told Fiske that BEST was working on the air conditioning replacement because it could not wait. Fiske told Moynihan that he would look into the matter and get back to him.
The defendants claim that after these meetings Det. Reilly called a Copeland compressor distributor in Rhode Island with the serial numbers from the Siebe compressors. After reading the numbers to the distributor, Det. Reilly says he learned that the compressors were neither “new” nor rebuilt, but were the same compressors which had been originally installed in 1984 and 1996. (Fiske disputes almost all of the defendants’ facts.) Det. Reilly spoke to Sergeant Brian Coyle (“Sgt. Coyle”), the head police prosecutor, who told him to apply for a show cause hearing against Fiske.
On July 18, 2000, Fiske had Smith fax a letter to Moynihan, indicating Siebe’s intent “to meet its obligation” and that Siebe wished “to participate in the repair costs.” The next day, Det. Reilly called Fiske and acknowledged the letter, but told him that he would have to pay for the entire repair cost, or he would be charged criminally. Fiske responded, “Detective Reilly, again, this is a civil matter, not a criminal matter. Please don’t threaten me. In our letter, we outlined what we were willing to do. I think we’re being very reasonable with it. If you feel — if you feel it’s a criminal matter, then that’s your prerogative. Come on up and bring your cuffs.” Det. Reilly responded, “Well, we’re going to proceed with a show cause hearing on you.” In the end, Siebe never performed any repairs on the two compressors. BEST handled all repairs.
In August of 2000, Sgt. Dawes conducted a show cause hearing against Fiske, and the clerk magistrate issued a complaint on the charge of larceny by false pretenses. On June 18, 2001, the complaint was dismissed upon Fiske’s motion. Fiske was never arrested, placed in custody, or handcuffed at any time during these proceedings.

DISCUSSION

A. Defendant’s Motion to Dismiss under the Massachusetts Anti-SLAPP Statute: G.L.c. 231, §59H

[4]

The individual defendants move to dismiss the plaintiffs Massachusetts law claims under G.L.c. 231, §59H, the Massachusetts anti-SLAPP statute. The statute provides, in pertinent part:
In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss.
G.L.c. 231, §59H (emphasis added).
The Supreme Judicial Court has read the phrase
“based on said party’s exercise of its right of petition under the constitution” as restricting the statute’s coverage to those defendants who petition the government on their own behalf. In other words, the statute is designed to protect overtures to the government by parties petitioning in their status as citizens.
Kobrin v. Gastfriend, 443 Mass. 327, 332 (2005). Where a defendant is not “seeking from the government any form of redress for a grievance of his own or otherwise petitioning on his own behalf, he [is] not exercising his ‘right of petition under the constitution’ within the meaning of the statute.” Id. at 330 (emphasis added), quoting G.L.c. 231, §59H.
Here, the defendants were all government employees, engaged in conduct not on their own behalf as citizens, but on the behalf of the Town in their capacities as government employees. Under Kobrin, the defendants were not engaged in “petitioning activity,” as contemplated by the anti-SLAPP statute. Therefore, because the defendants have not met the initial burden of proof required under the anti-SLAPP statute, the motion to dismiss under G.L.c. 231, §59H is denied.

B. Summary Judgment Standard

The defendants also move for summary judgment on each of Fiske’s thirteen claims. Summaiyjudgment shall be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e). “That some facts are in dispute will not necessarily defeat a motion for summary judgment. The point is that the disputed issue of fact must be material.” Beatty v. NP Corp., 31 Mass.App.Ct. 606, 607-08 *245 (1991), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988). Only those facts that, if true, provide a basis for a reasonable juiy to find for a party are material. See Community Nat’l Bank v. Dawes, 369 Mass. 550, 556-57 (1976). “As to materiality, the substantive law will identify which facts are material.” Anderson, 477 U.S. at 248. When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmov-ing party, drawing all permissible inferences in his or her favor. Douillard v. LMR, Inc., 433 Mass. 162, 163 (2001).
C. Counts (1) - (4): The Federal Civü Rights Act, 42 U.S.C. §1983
Fiske asserts Counts (l)-(4) against the defendants for violation of the Federal Civil Rights Act, 42 U.S.C. §1983 (“§1983”).[5] To establish a claim under §1983, Fiske must allege (1) that the defendants acted “under color of state law" and (2) that the defendants deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). It is undisputed that the defendants acted under color of State law in this case.
Fiske claims that when the defendants committed the torts of abuse of process and malicious prosecution, their actions deprived him of his Fifth and Fourteenth Amendment rights to due process of law and his Fourth Amendment right to be free from unlawful seizures. “Section 1983 ‘is not itself a source of substantive rights,’ but merely provides ‘a method for vindicating federal rights elsewhere conferred.’ ‘The first step in any such claim is to identify the specific Constitutional right allegedly infringed.’ ” Albright v. Oliver, 510 U.S. 266, 271 (1994) (citations omitted) (“Albright).

1. Abuse of Process as the Underlying Offense

Fiske alleges that Counts (1)-(4) could be based on the underlying offense of abuse of process. The First Circuit has held that there can be no cognizable claim for abuse of process under §1983, because the Supreme Court had effectively eliminated this type of claim with its decisions upholding qualified immunity. Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989) (abuse of process not cognizable under §1983). Fiske cannot succeed on Counts (1)-(4) under this theory.

2. Malicious Prosecution as the Underlying Offense

Fiske also alleges that Counts (l)-(4) can be based on the underlying offense of malicious prosecution. “A garden-variety claim of malicious prosecution garbed in the regalia of §1983 must fail." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996). “More is needed to transform [a common law] malicious prosecution [claim] into a claim cognizable under section 1983. To bridge the gap, the plaintiff also must show a deprivation of a federally protected right.” Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Fiske has not bridged the gap and, thus, cannot base Counts (1) -(4) on alleged malicious prosecution.

a. Fifth and Fourteenth Amendment Rights

Fiske claims he suffered a deprivation of his Fifth and Fourteenth Amendment substantive due process rights as a result of the defendants’ committing the tort of malicious prosecution. A plaintiff cannot base a §1983 malicious prosecution claim on an alleged deprivation of substantive due process rights alone. Albright, 510 U.S. at 273. Where “a particular Amendment ‘provides an explicit textual source of constitutional protection’ against a particular sort of government behavior, ‘that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims...’ “ Id. at 273, quoting Graham v. Connor, 490 U.S. 386, 395 (1989). A plaintiff cannot seek relief for malicious prosecution based upon deprivation of his rights under ’’substantive due process, with its ‘scarce and open-ended’ ‘guideposts . . .’ “ Id.; see also Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994) (“Albright would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983 . . .”).
Fiske has acknowledged, both in his written brief and at the summary judgment hearing, that the law is against him. It is clear that it is. Because the law does not recognize §1983 malicious prosecution claims for an alleged deprivation of Fifth and Fourteenth Amendment due process rights, Fiske cannot assert Counts (l)-(4) on this theory.

b. Fourth Amendment Rights

Fiske also claims he suffered a deprivation of his Fourth Amendment right to be free from unlawful seizure by the defendants’ malicious prosecution. In order to demonstrate a violation of the Fourth Amendment for purposes of a §1983 malicious prosecution claim, the plaintiff must be “actually seized pursuant to legal process.” Nieves, 241 F.3d at 54. Fiske argues that although he was never actually placed into custody, handcuffed, or arrested, he was nonetheless “actually seized pursuant to legal process.” He cites to Justice Ginsburg’s concurring opinion in Albright
In Albright, Justice Ginsburg advocated the position that an individual who is released pending trial is “seized” under the Fourth Amendment, because such person “is scarcely at liberty; he remains apprehended, arrested in his movements, indeed ‘seized’ for trial, so long as he is bound to appear in court and answer the state’s charges.” Albright 510 U.S. at 279. If thus unlawfully “seized,” a plaintiff could present a cognizable §1983 malicious prosecution claim.
In Nieves, the First Circuit addressed the “open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution *246 on the basis of an alleged Fourth Amendment violation . . ." Nieves, 241 F.3d at 54.
The tort of malicious prosecution permits damages for a deprivation of liberty — a seizure — pursuant to legal process. Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure).
Id. (emphasis in original).
The First Circuit explicitly declined to follow Justice Ginsburg’s position, stating, “Notwithstanding the eminence of its sponsor, the view that an obligation to appear in court to face criminal charges constitutes a Fourth Amendment seizure is not the law.” Id. at 55. Thus, there is no deprivation of a Fourth Amendment right where a person is not actually seized pursuant to legal process, i.e. arrested pursuant to an arrest warrant or subjected to post-arraignment deprivations of liberty pursuant to a subsequent charging document. Id. at 54-57 (ordinary conditions of pre-trial release do not constitute a seizure).
Fiske freely admits he was never arrested, handcuffed, or placed in custody, at any time. Instead, he argues, using Justice Ginsburg’s concurrence, that he was seized because he “suffered the stress and anxiety of knowing . . . that serious criminal charges were pending against [him],” his reputation was “sullied,” he had to appear “before the criminal court a number of times in the pretrial period,” and he “endured the trial." As Nieves makes clear, Justice Ginsburg’s concurring position is not the law, and because Fiske was not “actually seized,” he did not suffer a deprivation of his Fourth Amendment rights. Therefore, Fiske cannot assert Counts (l)-(4) as a§1983 malicious prosecution claim based on an alleged deprivation of his Fourth Amendment rights.
Fiske has failed to allege a deprivation of any federal right under any theory, which, as a matter of law, prevents him from presenting a claim under §1983. Therefore, summary judgment will be granted as to Counts (l)-(4).

D. Count (5): The Massachusetts Civil Rights Act, G.L.c. 12, §111

Fiske asserts Count (5) against all defendants for violation of the Massachusetts Civil Rights Act, (“MCRA”), G.L.c. 12, §111. To establish a cognizable claim under the MCRA, Fiske must prove:
(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by “threats, intimidation or coercion.
Haufler v. Zotos, 446 Mass. 489, 504 (2006), quoting Bally v. Northeastern University, 403 Mass. 713, 717 (1989).
Because a “municipality is not a ‘person’ covered by the Massachusetts Civil Rights Act (MCRA), G.L.c. 12, §§11H, 111,” the Town is entitled to summary judgment on Fiske’s MCRA claim. Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 591-92 (2001). Furthermore, the individual defendants are entitled to summary judgment as they are sued in their official capacities. “To avoid a State’s sovereign indemnity to a damages suit, a plaintiff must sue the State official in his individual and not his official capacity." Id. at 593.
Fiske has sued the individual defendants in their individual capacities. He does not, however, allege exactly which of his “secured rights” were allegedly violated. This is the first element of the prima facie case for an MCRA claim. Nevertheless, Fiske argues that the Supreme Judicial Court would adopt Justice Ginsburg’s concurring opinion in Albright if it were asked whether the Massachusetts Declaration of Rights would support an MCRA claim for malicious prosecution on the basis of an alleged Article 14 violation.
The defendants argue, as they did in connection with Fiske’s claims under §1983, that because Fiske was never “actually seized,” he suffered no interference with his Article 14 rights. Fiske admits that he may not have presented a cognizable §1983 claim for a violation of the Fourth Amendment, but claims, citing Goodridge v. Department of Public Health, 440 Mass. 309, 328-29 (2003), that because “the Massachusetts Constitution is in some instances more protective of individual liberty interests than is the Federal Constitution,” he can assert a valid claim under the MCRA.
“The Legislature intended to provide a remedy under G.L.c. 12, §§111, coextensive with 42 U.S.C. §1983 . . ., except that the Federal statute requires State action whereas its State counterpart does not . . .” Batchelder v. Allied Stores Corp., 393 Mass. 819, 821-23 (1985) (emphasis added). Fiske’s claim that Albright “is a purely federal construction” is inaccurate. Although the “Massachusetts Constitution is in some instances more protective of individual liberty interests than is the Federal Constitution,” Goodridge, 440 Mass. at 328-29, there is no indication that the Supreme Judicial Court would support Justice Ginsburg’s position in Albright and find that Fiske was “seized” under Article 14, so as to support an MCRA claim.
Additionally, the Supreme Judicial Court looks to the federal interpretation of §1983 for guidance in interpreting the MCRA. Batchelder, 393 Mass. at 821-23. Justice Ginsburg’s position has yet to receive any support from the rest of the Supreme Court. The First Circuit expressly rejected Justice Ginsburg’s position *247 in Nieves. Nieves, 241 F.3d at 55-56. This Court will not extend the protections afforded by Article 14. Therefore, summary judgment will be granted as to all defendants for Count (5).[6]

E. Counts (6), (7), (8), (9), and (12): Immunity

Next, Fiske asserts: Count (6) (against all defendants): malicious prosecution; Count (7) (against Det. Reilly): slander; Count (8) (against Det. Reilly): abuse of process; Count (9) (against Chief Gould, Det. Reilly, Sgt. Dawes, and Sgt. Coyle.): civil conspiracy; and Count (12) (against all defendants): intentional infliction of emotional distress. These torts are all common-law intentional torts.
In order to present these claims against the Town and the individual defendants, Fiske must first overcome the defendants’ claims that they are entitled to immunity. Sgts. Coyle and Dawes claim they are entitled to absolute prosecutorial immunity. The Town and all the individual defendants claim they are entitled to sovereign immunity for these claims, under the Massachusetts Tort Claims Act, G.L.c. 258.

1.Prosecutorial Immunity for Defendants Sgts. Coyle and Dawes

A prosecutor is “absolutely immune from civil liability for the performance of his official duties.” Chicopee Lions Club v. Dist. Attorney for Hampden Dist. 396 Mass. 244, 251 (1985). “(I]n order to ensure the unwavering administration of the laws, and to protect prosecutors from the debilitating task of defending themselves in civil lawsuits for their official acts, absolute immunity must at the same time shelter both the scrupulous and the errant public official.” Id. at 252. “Where the activity in question is closely related to the judicial phase of a criminal proceeding, or involves the skills or judgment of an advocate, the activity will be subject to absolute immunity.” Id. at 248.
Here, Sgt. Dawes acted only in performance of his duties as an assistant police prosecutor. He met first Fiske at the police station, when Sgt. Dawes told Fiske that he had committed larceny by false pretenses. Then, Sgt. Dawes conducted the show cause hearing. Both of these actions are “related to the judicial phase of a criminal proceeding,” or at least “involve the skills or judgment of an advocate.” Id. Thus, even if Sgt. Dawes acted with an ulterior motive, i.e., as an “errant public official,” he is entitled to absolute immunity for his actions.
Sgt. Coyle, the head police prosecutor, instructed Det. Reilly to seek a complaint against Fiske through the show cause hearing and assigned the hearing to Sgt. Dawes. Again, because these actions are “related to the judicial phase of a criminal proceeding,” Sgt. Coyle is entitled to absolute immunity. Therefore, summary judgment will be granted as to Sgts. Coyle and Dawes on Counts (6), (8), (9), and (12).

2.G.L.c. 258 Sovereign Immunity for the Town for Intentional Torts

The Town claims it is entitled to sovereign immunity for Counts (6), (8), and (12) under the Massachusetts Tort Claims Act, G.L.c. 258.
The Act, enacted in 1978, created a cause of action against public employers for the negligent or wrongful acts or omissions of their employees acting within the scope of their employment, thus abrogating the doctrine of governmental immunity. Intentional torts are expressly exempted from the Act [under § 10(c)], and therefore a public employer cannot be sued for its employee’s intentionally tor-tious conduct.
Nelson v. Salem State College, 446 Mass. 525, 537 (2006).
Here, Count (6): malicious prosecution; Count (8): abuse of process; and Count (12): intentional infliction of emotional distress are clearly intentional torts and explicitly fall within the scope of G.L.c. 258, § 10(c). Therefore, the Town is immune from liability on these three claims.[7] See Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 284-85 (1985); Mellinger v. Town of W. Springfield, 401 Mass. 188, 196 (1987); Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 397 (1996); Howcroft, 51 Mass.App.Ct. at 596.

3.G.L.c. 258 Sovereign Immunity for the Individual Defendants for Intentional Torts

Fiske asserts Counts (6), (7), (8), (9), and (12) against each individual defendant, both in their official and individual capacities. “(T]o avoid a State’s sovereign immunity to a damages suit, a plaintiff must sue the State official in his individual and not his official capacity.” O’Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 n.13 (1993). Thus, as the Town is afforded sovereign immunity under the G.L.c. 258, § 10(c) for intentional torts, so too are the individual defendants, when sued in their official capacities. See Howcroft, 51 Mass.App.Ct. at 596; Nelson, 446 Mass. at 539 n.9; Whalen v. Commonwealth, Civil No. 00886 (Hampden Super.Ct Jun. 26, 2006) (Brassard, J.) [21 Mass. L. Rptr. 193].
Public employees may, however, be held personally liable for intentional torts if sued in their individual capacities and G.L.c. 258 does not apply. Howcroft, 51 Mass.App.Ct. at 596 (although statute granting governmental immunity bars claim against city for intentional infliction of emotional distress, it does not bar a claim against city’s police officers in their individual capacities); Nelson, 446 Mass. at 537 (“In this case, the individuals are being sued only in their individual capacities, and therefore, [G.L.c. 258] . . . does not apply”); South Boston Betterment Trust Corp. v. Boston Redevelopment Authority, 438 Mass. 57, 69 (2002) (“Because the mayor has been sued individually for an intentional tort, G.L.c. 258 does not apply”). Because the individual defendants are being sued in their *248 individual capacities, Counts (6), (7), (8), (9), and (12) can be brought against Chief Gould, Det. Reilly, and Moynihan.[8]
F. Count (6): Malicious Prosecution (AIL defendants)[9]
The elements for malicious prosecution are: (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice. Correllas v. Viueiros, 410 Mass. 314, 318 (1991).
The defendants argue that because there was probable cause to believe Fiske committed larceny by false pretenses, Fiske’s malicious prosecution claim fails. “Probable cause in the context of a civil action for malicious prosecution has long been defined as ‘such a state of facts in the mind of the . . . [defendant] as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion,’ that the plaintiff had committed a crime.” Carroll v. Gillespie, 14 Mass.App.Ct. 12, 19 (1982).
There is a unique twist involving the different functions between judge and jury in regard to probable cause in malicious prosecution cases. “It has been said repeatedly that when the facts are fully established or undisputed, probable cause becomes a question of law ... In those situations, this rule apparently has the practical effect of requiring the judge to decide the issue of probable cause, even though the evidence, viewed under the usual directed verdict standard, is sufficient to permit the juiy to decide the issue. It is equally well established, however, that the rule applies only in the situations specified and that ‘[w]hen the facts are disputed . . . probable cause is a question for the jury.’ ”
Bednarz v. Bednarz, 27 Mass.App.Ct. 668, 674 n.1 (1989) (citations omitted); see also Morreale v. DeZotell, 10 Mass.App.Ct. 281, 282 (1980), citing Restatement (Second) Torts §673, Comment on (b) and (c).
Here, the parties dispute whether the compressors were “new” when sold to the Town, whether Fiske was aware of the facts contained in the Siebe contract, and whether Fiske’s statement that he was “responsible for the actions of the company” was actually an admission of guilt. Because these disputed facts relate to whether the North Attleboro police had probable cause to proceed against Fiske criminally, the issue is for the juiy to decide. Thus, summary judgment for Count (6) will be denied as to Chief Gould, Det. Reilly, and Moynihan.
C. Count (7): Slander (against Det Reilly)[10]
Fiske claims that Det. Reilly made defamatoiy statements to the North Attleboro Police Department that Fiske committed larceny by false pretenses.[11] In order to present a cognizable claim for slander, one of the elements that Fiske must prove is the falsity of Reilly’s statements against him. White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004). Det. Reilly claims that Fiske has failed to demonstrate the falsity of any of the allegedly defamatoiy statements. This is a classic question of fact for the juiy decide.
Det. Reilly also claims that any allegedly defamatoiy statements he made are absolutely privileged because they were made in connection with judicial proceedings.[12] “Statements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith.” Correllas, 410 Mass. at 319. “Under Massachusetts law, statements made to police or prosecutors prior to trial are absolutely privileged if they are made in the context of a proposed judicial proceeding.” Id. at 320-21; see also Sriberg v. Raymond, 370 Mass. 105, 108 (1976); Kipp v. Kueker, 7 Mass.App.Ct. 206, 210-12 (1979).
Here, any slanderous statements that Det. Reilly allegedly published were made either to other police officers or to the police prosecutors and in the context of the proposed show cause hearing. Therefore, Det. Reilly has an absolute privilege, and sum-maiy judgment will be granted to Det. Reilly as to Count (7).
H. Count (8): Abuse of Process (against all defendants)[13]
The elements of abuse of process are: “(1) ‘process’ was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.” Kelley, 26 Mass.App.Ct. at 558, quoting Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986). The defendants argue that Fiske has not shown an ulterior or illegitimate purpose. As discussed above, however, Fiske has offered sufficient evidence of an illegitimate purpose on the defendants’ part. Det. Reilly, explicit statement to Fiske that he would have to pay for the entire repair bill or face criminal charges certainly could support an inference that the police charged Fiske merely to collect money they felt was owed to the Town. This is an improper purpose. See, e.g., Ladd v. Polidoro, 424 Mass. 196, 198 (1997) (using process for collateral advantage, to accomplish something for which the process is not designed is an improper purpose). Use of criminal process to effect a civil recoveiy is improper. Wood v. Bailey, 144 Mass. 365, 367 (1887) (“Perhaps the most frequent form of such abuse is by working upon the fears of the person under arrest, for the purpose of extorting money or other property, or of compelling him to sign some paper, to give up some claim, or to do some other act, in accordance with the wishes of those who have con *249 trol of the prosecution”). Therefore, the motion for summary judgment on Count (8) against Chief Gould, Det. Reilly, and Moynihan will be denied.

I.Count (9): Civil Conspiracy (against Chief Gould, Det Reilly, Sgt Dawes, and Sgt Coyle for civil conspiracy to commit abuse of process).

[14]

The Commonwealth recognizes two types of civil conspiracy. Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998). “There is precedent supporting a ‘very limited cause of action in Massachusetts’ for ‘civil conspiracy’ of a coercive type ... ‘In order to state a claim of [this type of civil conspiracy], plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently.’ ” Aetna Casualty Surety Co. v. P&B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994), quoting Jurgens v. Abraham, 616 F.Sup. 1381, 1386 (D.Mass. 1985). The second type of civil conspiracy is “akin to a theory of common law joint liability in tort.” Id. at 1564. Fiske did not discuss this claim in his memorandum nor is it clear on which theory he rests his claim. Therefore, the court will analyze both.

1. “Coercive" Civil Conspiracy

The first type of civil conspiracy requires proof that by “mere force of numbers acting in unison” the defendants exercised “some peculiar power of coercion over the plaintiff which any individual standing in a like relation to the plaintiff would not have had.” Fleming v. Dane, 304 Mass. 46, 50 (1939).
The most common illustration of such a “conspiracy” is to be found in the combined action of groups of employers or employees, where through the power of combination pressure is created and results brought about different in kind from anything that could have been accomplished by separate individuals. Outside of this and related or similar fields, instances of conspiracy which is in itself an independent tort are rare and should be added to with caution.

Id.

Here, Fiske has presented no proof, aside from the bare allegation of “coercion” in his complaint, that the defendants, by their numbers alone, had any greater power of coercion over him than any one of them would have had. Fiske has failed to establish a “coercive conspiracy.”

2. “Concerted Action” Civil Conspiracy

The second type of civil conspiracy “derives from ‘concerted action,’ whereby liability is imposed on one individual for the tort of another.” Kurker, 44 Mass.App.Ct. at 188. To present a prima facie case for “concerted action” conspiracy, the plaintiff need not prove the element of coercion. Id. at 189. Instead, it requires proof of: (1) a common plan; (2) to commit a tortious act; (3) where the participants know of the plan and its purpose; and (4) the participants take affirmative steps to encourage the achievement of the result. Id., quoting Stock v. Fife, 13 Mass.App.Ct. 75, 82 n.10 (1982).
Here, the evidence supports an inference that the defendants acted together to form a plan to extort money from Fiske, to pay for the entire repair bill from BEST. This plan employed either or both malicious prosecution and abuse of process. Fiske presented evidence that the defendants had knowledge of the plan — Sgt. Dawes and Det. Reilly met with Fiske at the North Attleboro Police Department and intimidated him with threats that he had committed larceny by false pretenses and Chief Gould initiated the investigation of Fiske by ordering Sgt. Dawes to meet with Barnes. Finally, the defendants took affirmative steps towards the plan’s commission by initiating the criminal proceedings against Fiske. Therefore, the defendants’ motion for summary judgment for Count (9) as to Chief Gould and Det. Reilly in their individual capacity will be denied.
J.Count (12): Intentional Infliction of Emotional Distress (all defendantsj[15]
In order to present a prima facie case for intentional infliction of emotional distress, Fiske must show that the defendants’ behavior was “extreme and outrageous,” “beyond all bounds of decency,” and “utterly intolerable in a civilized community.” Agis v. Howard Johnson Co., 371 Mass 140, 145 (1976). The defendants argue that the defendants’ conduct was not extreme and outrageous, as a matter of law. There is, however, a genuine issue of material fact exists as to whether their conduct reached this level. Thus, the defendants’ motion for summary judgment for Count (12) will be denied as to Chief Gould, Moynihan and Det. Reilly.

K.Count (11): Negligence (against the Town for the negligence of the individual defendants, under G.L.c. 258)

Fiske claims that the individual defendants carelessly and recklessly misstated and failed to disclose relevant exculpatory evidence to the clerk magistrate in the show cause hearing, thereby negligently causing his unlawful prosecution. General Laws c. 258 provides the exclusive remedy for injuries allegedly caused by the negligent acts or omissions of municipal employees. G.L.c. 258, §2.
The Town argues that it is not liable under G.L.c. 258 for two reasons. First, it claims that the acts of the individual defendants fall within the “discretionary functions exception” to liability under G.L.c. 258, § 10(b). Second, the Town argues that Fiske failed to “present” the G.L.c. 258 negligence claim to the proper executive officer within the statute of limitations.

*250
1. The “Discretionary Functions Exception," G.L.c. 258, §10(b)

The Town argues that because the individual defendants’ actions fall within the “discretionary functions exception” to G.L.c. 258 liability, it cannot be held liable for any negligence on their part. G.L.c. 258, §10[b). In response, Fiske, relying on the Supreme Judicial Court’s holding in Sena v. Commonwealth, 417 Mass. 250, 265 n.5 (1994), argues that the “discretionary functions exception” does not apply because the defendants “carelessly and recklessly misstated and failed to disclose relevant exclusionary evidence to a magistrate,” thereby negligently causing his unlawful prosecution.
General Laws c. 258, §10(b) provides that public employers are not liable for the negligent acts or omissions of its employees, if such acts or omissions are “based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.” G.L.c. 258, §10(b).
In “determining whether certain conduct falls within the discretionary functions exception . . . [t]he first step ... is to determine whether the governmen1 tal actor had any discretion at all as to what course of conduct to follow... The second and far more difficult step is to determine whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability.” Sena, 417 Mass. at 255-56.
These officers had discretion to determine which course to follow in conducting the investigation and seeking a criminal charge against Fiske. See id. at 256. The second question is whether this discretion “is that kind of discretion for which § 10(b) provides immunity.” Id. “(A]n officer who carelessly or recklessly misstates or fails to disclose relevant information he has to a magistrate evaluating a warrant application, and thereby ‘subvertís] the integrity of [the warrant process] by ’’selling" [the magistrate] “shoddy merchandise” without appropriate disclaimers,’ would likely not be engaged in a discretionary activity." Id. at 265 n.5.
Fiske presented evidence that supports an inference that Fiske had no involvement in deciding the terms contained in the Siebe contract and that he merely signed the contract in his capacity as a corporate officer. Furthermore, Fiske presented evidence that once he was alerted to the problem, he immediately sought to remedy the situation by: immediately returning Det. Reilly’s phone call when he left the first voicemail with Fiske; calling Det. Reilly again later in the day to schedule the meeting; attending the merting the following Monday with Sgt. Dawes and Det. Reilly and expressing Siebe’s intent to fix the problem — despite the two officers’ indications that they would seek criminal charges; and sending a letter to Moynihan the veiy next day stating that Siebe would participate in the repair costs.
Nevertheless, at the show cause hearing, Sgt. Dawes provided the clerk magistrate with none of this information, which would certainly be relevant — especially any information about Fiske’s knowledge (or lack thereof) of the contract’s terms. Instead, Sgt. Dawes merely read a prepared statement basically summing up the charges against Fiske, and when mentioning the Siebe contract, Sgt. Dawes presented Fiske’s statement made during the meeting at the North Attleboro Police Department, that as vice president, he was “responsible for the actions of the company,” as if it were an admission that Fiske was personally responsible for terms contained in the contract.[16] Since Fiske’s awareness of the contract terms would be relevant to his knowledge and intent for a determination of elements of the crime charged, Sgt. Dawes’ presentation was substantially misleading to the magistrate.
It is reasonable to infer from this evidence that the police “carelessly or recklessly misstate[d] or fail[ed] to disclose relevant information” to the clerk magistrate in order to obtain leverage over Fiske to “pay the entire” bill owed to BEST. Id. Thus, whether the defendants supplied the clerk magistrate with “shoddy merchandise” is a genuine issue of material fact for the jury to determine. Sena, 417 Mass. at 257. Therefore, the “discretionary functions exception” does not support the granting of summary judgment as to Count (11).[17]

2. Written Presentment of the Claim, G.L.c. 258, §4

The Town also argues that Count (11) should be dismissed because Fiske did not provide written presentment of the negligence action to the proper government officials within two years, as required under G.L.c. 258, §4. General Laws c. 258, §4 requires that plaintiffs make the written presentment to the “executive officer” of the municipality within two years from the time an injury arises. The written presentment is deemed sufficient “in the case of a city or town,” if presented to any of the following:
mayor, city manager, town manager, corporation counsel, city solicitor, town counsel, city clerk, town clerk, chairman of the board of selectmen, or executive secretary of the board of selectmen . . .
G.L.c. 258, §4 (emphasis added).
On March 7, 2002, Fiske’s former attorney sent a written presentment letter to Chief Gould, Det. Reilly, and Moynihan, the town administrator, which provided explicit notice of the negligence claim, as required by G.L.c. 258, §4. See Exhibit J. None of these persons fall within the statutory list of public officials eligible to receive written presentment.
*251 Fiske’s former attorney also sent a copy of the letter to Robert C. Bliss, the North Attleboro Town Counsel, at 491 Mt. Hope Street, P.O. Box 1402, Attleboro Falls, MA 02763. See Exhibit J at 10. General Laws c. 258, §4 includes “Town Counsel” as a proper recipient for written presentment. So long as there is sufficient communication to the proper executive officer, the statute is satisfied. See Carifio v. Town of Watertown, 27 Mass.App.Ct. 571, 573-74 (1989). Fiske satisfied the written presentment requirement of Section 4; summary judgment for Count (11) will not be granted on this basis.
L. Count (13): The Massachusetts Consumer Protection Act, G.L.c. 93A (all defendants)
The defendants argue that they were not engaged in “trade or commerce” at any time during the events alleged in the complaint and cannot, therefore, be held liable under Ch. 93A. Chapter 93A, § 11 provides:
Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . may . . . bring an action in the superior court.
G.L.c. 93A, §11.
Whether a governmental entity is ever amenable to suit under c. 93A remains an open issue . . . The question is controversial because c. 93A contains no explicit indication that governmental entities are to be liable under its provisions. Both §11 and §9 of c. 93A require that the defendant be a “person” engaged in trade or commerce. “Person” is defined in the statute as including “natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.” G.L.c. 93A, §l(a). Although the term “person” ordinarily is not construed as including the State or its political subdivisions, uncertainty exists because only a “person” may bring suit under c. 93A and governmental entities have been considered to have standing to do so.
M. O'Connor Contracting, Inc. v. City of Brockton, 61 Mass.App.Ct. 278, 286 n.8 (2004) (citations omitted).
The cases do establish however that a municipality is not liable under Ch. 93A when it is engaged in governmental activity, rather than “ ‘acting in a business context,’ that is, when it is not engaged in ‘trade or commerce.’ ” Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 86 (2004), quoting All Seasons Services, Inc. v. Commissioner of Health & Hosps. of Boston, 416 Mass. 269, 271 (1993). Whether a “person” is engaged in “trade or commerce” depends on “the nature of the transaction, the character of the parties involved and [their] activities and whether the transaction [was] motivated by business ... reasons.” Park Drive Towing, Inc., 442 Mass. at 86, quoting Boston Housing Authority v. Howard, 427 Mass. 537, 538 (1998).
In M. O’Connor Contracting, Inc., the city of Brockton entered into a construction contract with the plaintiff for the construction of a new municipal building. Id. at 279. When a dispute arose between the parties, the city refused to pay the plaintiff the amount due on the contract, so the plaintiff sued the city under Ch. 93A. Id. at 279-80. An arbitrator found the city liable under Ch. 93A and awarded damages to the plaintiff. Id. at 280. The Appeals Court ruled that the city was not engaged in “trade or commerce,” but was rather engaged in “performance of a governmental function, i.e., contracting for the construction of a municipal building to be used solely for municipal purposes.” Id. at 285. See also All Seasons Services, Inc., 416 Mass. at 271 (hospital operated by a municipal board not engaged in “trade or commerce” soliciting bids and awarding contracts for food and vending services at its facility, because it was a charitable organization that did not seek to profit from its “transaction” with the plaintiff); Peabody N.E., Inc. v. Town of Marshfield, 426 Mass. 436, 439-41 (1998) (Townnot engaged in “trade or commerce” where it contracted with plaintiff pursuant to administrative order regarding waste treatment and where the town’s waste treatment facility was not a “profit-making operation”); Howard, 427 Mass. at 538-39 (defendant authority, who administers public housing and is the landlord of the premises leased to tenant, not engaged in “trade or commerce”); Morton v. Town of Hanover, 43 Mass.App.Ct. 197, 205-06 (1997) (neither the town nor its board of public works was engaged in “trade or commerce” with respect to the surcharge that the board assessed to water users in the area of a new water main for the cost of the main).
Fiske complains that the manner in which the defendants sought payment from him violated Ch. 93A, and that such actions were taken in “trade or commerce.” The defendants’ actions, however, centered around the collection of money for the North Attleboro Town Hall, a municipal building. They acted for the benefit of the Town and its employees in furtherance of a governmental function, not to benefit a “profit-making operation.” Peabody N.E., Inc., 426 Mass. at 440. Since the defendants were not engaged in “trade or commerce,” summary judgment will be granted on Count (13) as to all defendants.
M. Count (10): Vicarious Liability (against the Town)
In order to hold the Town liable for the acts of the individual defendants, Fiske must allege a complaint under G.L.c. 258, or some other statute creating a valid cause of action against the government, that would overcome its sovereign immunity. Count (10) makes the bare allegation that the Town is vicariously liable for the acts of the individual defendants, but *252 Fiske offers no additional information explaining his theory. Thus, because the Town is entitled to sovereign immunity, summary judgment will be granted on Count (10).

ORDER

For the reasons discussed in this memorandum, it is hereby ORDERED that the defendants’ motion to dismiss under Mass.R.Civ.P. 12(b)(1) and under G.L.c. 231, §59H is DENIED. The defendants’ motion for summary judgment is ALLOWED IN PART and DENIED IN PART.
Counts (l)-(4) Federal Civil Rights Claims: Summary judgment granted as to all defendants.
Count (5) Massachusetts Civil Rights Claim: Summary judgment granted as to all defendants.
Count (6) Malicious Prosecution: Summary judgment granted as to the Town, Sgt. Coyle and Sgt. Dawes. However, summary judgment denied as to Chief Gould, Det. Reilly, and Moynihan.
Count (7) Slander: Summary judgment granted as to Det. Reilly.
Count (8) Abuse of Process: Summary judgment granted as to the Town, Sgt. Coyle and Sgt. Dawes. Summary judgment denied as to Chief Gould, Det. Reilly, and Moynihan.
Count (9) Civil Conspiracy: Summary judgment granted as to Sgt. Coyle and Sgt. Dawes. Summary judgment denied as to Chief Gould and Det. Reilly.
Count (10) Vicarious Liability: Summary judgment granted as to the Town.
Count (11) Negligence: Summary judgment denied as to the Town.
Count (12) Intentional Infliction Emotional Distress: Summary judgment granted as to theTown, Sgt. Coyle and Sgt. Dawes. Summary judgment denied as to Chief Gould, Det. Reilly, and Moynihan.
Count (13) Ch. 93A: Summary judgment granted as to all defendants.

Siebe is now known as Environmental Controls ENE, Inc., but will be referred to as Siebe.

The parties disagree on the definition of “new” as used to describe compressors used in the HVAC industry.

The defendants also move to dismiss certain claims under Mass.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The Court need not address this motion, because it sufficiently addresses the challenged claims on the defendants’ motion for summary judgment on the same claims.

Count (1) is asserted against Chief Gould, Det. Reilly, Sgt. Dawes, Sgt. Coyle, and Moynihan: Count (2) against Chief Gould for failure to provide adequate supervision of his officers: Count (3) against the Town for maintaining unconstitutional customs, practices, and policies; and Count (4) against all defendants for conspiracy. All four claims are brought under §1983.

Fiske cites Kelley v. Stop & Shop Cos., 26 Mass.App.Ct. 557 (1988), to demonstrate the expansive protection that the MCRA offers over §1983. Kelley, says Fiske, upheld an MCRA verdict “based solely on abuse of process.” The plaintiff in Kelley, however, sought “damages for, among other things, abuse of process,” and later “filed an amended complaint” alleging an MCRA violation. Kelley, 26 Mass.App.Ct. at 557. The jury returned a verdict on the MCRA claim. That portion of the verdict was not appealed, and there was no discussion about the MCRA verdict in the case. The MCRA verdict could have been based upon any number of factual scenarios. Id. at 557-58. Fiske cannot simply assume it was “based solely on an abuse of process theory."

Because the Town cannot be liable for (6), (8), and (12) under the doctrine of sovereign immunity, this Court need not address the Town’s motion to dismiss these claims under Mass.R.Civ.P. 12(b)(1).

As discussed above, Sgts. Coyle and Dawes are entitled to absolute prosecutorial immunity for these claims. The court does not consider whether the remaining individuals are entitled to qualified immunity on these common-law torts, since they did not raise that doctrine in their papers.

The Town has sovereign immunity under G.L.c. 258 and Sgts. Coyle and Dawes have absolute prosecutorial immunity for this claim, as discussed above. This leaves defendants Chief Gould, Det. Reilly, and Moynihan, but only so far as they are sued in their individual capacities.

As discussed above, Det. Reilly cannot be sued in his official capacity for intentional torts, but only his individual capacity.

The complaint alleges that Det. Reilly published the slanderous statements on April 19, 2000. April 19, 2000 was before the Siebe compressors failed. The complaint is clearly incorrect on the date.

Det. Reilly also argued that the public interest in supporting the privilege protecting recommendations regarding former employees should be extended to this situation. This strikes this court as a non sequitur and the defendants offer no real analysis to support this theory. In any case, it is unnecessary for the court to decide the motion on this basis.

TheTown has sovereign immunity under G.L.c. 258 and Sgts. Coyle and Dawes have absolute prosecutorial immunity for this claim, as discussed above. This leaves defendants Chief Gould, Det. Reilly, and Moynihan, but only so far as they are sued in their individual capacity.

As noted above, Sgts. Dawes and Coyle are entitled to absolute prosecutorial immunity on this claim, which leaves only Chief Gould and Det. Reilly, sued in their individual capacities.

The Town has sovereign immunity under G.L. c. 258 and Sgts. Coyle and Dawes have absolute prosecutorial immunity for this claim, as discussed above. This leaves defendants Chief Gould, Det. Reilly, and Moynihan, but only so far as they are sued in their individual capacity.

See Fiske Deposition at 126-28.

The Town moves to dismiss Count (11) under Mass.R.Civ.P. 12(b)(1), arguing that the Court does not have jurisdiction over actions within the “discretionary function exception.” Because the Court has decided that the Town is not exempt as a matter of law, in this case, from G.L.c. 258 liability under this exception, the Town’s motion to dismiss on this basis is denied.