UNITRODE CORPORATION vs. DYNAMICS CORPORATION
OF AMERICA & another.

Suffolk.  October 5, 1979. — January 9, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Practice, Civil,* Parties.  *Corporation,* Stockholder, Tender offer.  *Massachusetts Take-Over Act.*

General Laws c. 110C, the Massachusetts Take-Over Act, does not provide a private right of action for equitable or injunctive relief which may be invoked by a target company, as defined in c. 110C, § 1, for alleged violations of the act. [491-493]

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Samuel Hoar (Joseph L. Cotter & James B. Farmer* with him) for the defendants.

*Thomas R. Paxman* for the plaintiff.

BRAUCHER, J.  Pursuant to S.J.C. Rule 3:21, 359 Mass. 790 (1971), the United States District Court for the District of Massachusetts has certified to us the question, "Does Mass. Gen. Laws ch. 110C, the Massachusetts Take-Over Act, provide a private right of action for equitable and injunctive relief which may be invoked by a target company as defined in Mass. Gen. Laws ch. 110C, § 1 for alleged violations of that Act?"  We answer that question in the negative, and therefore find it unnecessary to answer a second question certified by the same court.[1]

The action was brought on March 12, 1979, in the Superior Court in Middlesex County, and was removed to the Fed-

---

[1] "2.  Assuming that the answer to question No. 1 is in the affirmative, does the Superior Court have subject matter jurisdiction over an action pursuant to the Massachusetts Take-Over Act in which equitable and injunctive relief is sought by a target company?"

eral court by the defendants by a petition filed March 21, 1979. The defendants later moved that the complaint be dismissed on four grounds, and the two questions certified to this court relate to the first two of those grounds. The record before us includes the plaintiff's complaint and narrative statements of fact prepared separately by the plaintiff and by the defendants.

The complaint alleges the following facts. The plaintiff, Unitrode Corporation (Unitrode), is a Maryland corporation having its principal executive offices in Watertown, Massachusetts. It maintains significant operations and assets in Massachusetts, and its stock is listed on the New York Stock Exchange. The defendant, Dynamics Corporation of America (DCA), is a New York corporation with its principal executive offices in Connecticut; the defendant, Rooney, Pace, Inc. (Rooney), is a broker-dealer registered and located in New York. DCA, Rooney and others have acted together to acquire more than ten per cent of Unitrode's outstanding stock. Their acts and practices have constituted a "take-over bid," as defined in G. L. c. 110C, § 1, and Unitrode is the "target company," as so defined. The defendants have not made the public announcement or the filings with the State Secretary and the target company required by G. L. c. 110C, § 2, and have violated various provisions of §§ 3, 4, and 7.

In 1968 the Williams Act added § 13(d) and (e), and § 14(d), (e), and (f) to the Securities Exchange Act of 1934. Pub. L. No. 90-439, 82 Stat. 454 (1968), 15 U.S.C. §§ 78m(d), (e), 78n(d) - (f) (1976). Under those provisions a person who acquired beneficial ownership of more than ten per cent of a class of equity securities listed on a securities exchange was required, within ten days after the acquisition, to send a prescribed statement to the issuer and to each exchange where the security was traded and to file the statement with the Securities and Exchange Commission (SEC). Before a "tender offer" was made which, after consummation, would result in such ownership, the offeror was required to file a prescribed statement with the SEC. Amendments made in 1970 changed the ten per cent limit to five

per cent. Pub. L. No. 91-567, 84 Stat. 1497 (1970), 15 U.S.C. §§ 78m(d), (e), 78n(d) - (f) (1976).[2] According to the Federal decisions on the point, on violation of those provisions by the offeror, either the target company or a stockholder in that company — even though he has made no tender in response to the tender offer — has standing to maintain an action for equitable and injunctive relief. *Electronic Specialty Co.* v. *International Controls Corp.*, 409 F.2d 937, 946 (2d Cir. 1969). Accord, *Ronson Corp.* v. *Liquifin Aktiengesellschaft*, 497 F.2d 394 (3d Cir.), cert. denied, 419 U.S. 870 (1974); *Smallwood* v. *Pearl Brewing Co.*, 489 F.2d 579, 596 (5th Cir.), cert. denied, 419 U.S. 873 (1974); *H.K. Porter Co.* v. *Nicholson File Co.*, 482 F.2d 421, 423 (1st Cir. 1973); *GAF Corp.* v. *Milstein*, 453 F.2d 709, 719-721 (2d Cir. 1971), cert. denied, 406 U.S. 910 (1972). But see E. Aranow, H. Einhorn & G. Berlstein, Developments in Tender Offers for Corporate Control 111-112 (1977). The defendants assert that the plaintiff has brought such an action in a Federal court in New York in connection with the stock acquisitions here in issue.

The Massachusetts Take-Over Act, G. L. c. 110C, enacted by St. 1976, c. 121, like similar legislation in thirty-five other States, is superimposed on the Federal regulation provided by the Williams Act. See Note, Securities Law and the Constitution: State Tender Offer Statutes Reconsidered, 88 Yale L.J. 510, 514-516 (1979); E. Aranow, H. Einhorn & G. Berlstein, Developments in Tender Offers for Corporate Control c. 5 (1977). In three cases lower Federal courts have held that such statutes were preempted by the Williams Act or placed an impermissible burden on interstate commerce. *Great Western United Corp.* v. *Kidwell*, 577 F.2d 1256, 1274-1286 (5th Cir. 1978), rev'd on other grounds sub nom. *Leroy* v. *Great Western United Corp.*,

---

[2] For recent developments in this area, see discussion of SEC Proposed Rule 14e-2, 44 Fed. Reg. 9955, 9976-9979, 9987-9988 (1979) (to be codified if approved at 17 C.F.R. § 240.14e-2) in Brudney, Insiders, Outsiders, and Informational Advantages Under the Federal Securities Laws, 93 Harv. L. Rev. 322, 371-376 (1979).

443 U.S. 173 (1979) (Idaho statute). *Televest, Inc.* v. *Bradshaw,* Fed. Sec. L. Rep. (CCH) par. 97, 154 (E.D. Va. Sept. 3, 1979) (Virginia statute). *Dart Indus. Inc.* v. *Conrad,* 462 F. Supp. 1 (S.D. Ind. 1978) (Delaware statute). But cf. *City Investing Co.* v. *Simcox,* 476 F. Supp. 112, 116 (S.D. Ind. 1979) (Indiana statute). The constitutionality of the Massachusetts statute was attacked in *Tyco Laboratories, Inc.* v. *Connelly,* 473 F. Supp. 1157 (D. Mass. 1979), but the case was dismissed as moot. The validity of the statute is in issue in the Federal court in the present case; we are not asked to pass on any constitutional question, and we do not.

The Massachusetts statute includes the following remedial provisions. The State Secretary may order a hearing within twenty days after a filing under the statute, either if he deems it necessary or appropriate for the protection of offerees in the Commonwealth or if a hearing is requested by the target company. § 2. Whenever it appears that any person has engaged or is about to engage in a violation, the State Secretary may issue a cease and desist order and bring an action to enjoin the violation, or he may refer the matter to the Attorney General or a district attorney. § 9 (*e*). Criminal penalties are provided for certain wilful violations. § 9 (*f*). An offeror who purchases a security in connection with a take-over offer in violation of the statute is liable to the seller. § 9 (*a*). No express provision is made for actions by target companies or by their shareholders who do not become sellers.

The complaint alleges that the defendants have not made the filings required by § 2 of the Massachusetts statute. The defendants assert that they are prepared to establish, at a later stage of the litigation, that there has been no "tender-offer," and hence that there has been no "take-over bid" and no "target company" as defined in § 1. See E. Aranow, H. Einhorn & G. Berlstein, Developments in Tender Offers for Corporate Control c. 1 (1977). The result apparently would be that neither the Massachusetts statute nor the Williams Act provisions regulating tender offers would have any application. It has not been suggested to us that

"tender offer" has a different meaning in the Massachusetts statute from its meaning in the Williams Act; neither statute defines "tender offer."

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortgage Advisors, Inc.* v. *Lewis,* 444 U.S. 11, 15 (1979), and cases cited. Unlike the statute involved in *Everett Town Taxi, Inc.* v. *Aldermen of Everett,* 366 Mass. 534, 535-536 (1974), the express provisions of G. L. c. 110C are not "neutral" on the matter before us. Instead, other private remedies are explicitly authorized, and there is explicit provision for a request by a target company for a hearing before the State Secretary, but there is no reference like that in the *Everett Town Taxi* case to a civil action that can be read to refer to an action brought by a target company. When the Massachusetts statute was enacted, models were available either to create or to negate the creation of the right of action now claimed. The Colorado statute, effective in 1975, negated the creation of "any cause of action not specified." Colo. Rev. Stat. § 11-51.5-106(6) (Supp. 1978). The Indiana statute, also effective in 1975, provided explicitly for a right of action by a target company. Ind. Code Ann. § 23-2-3-8 (Supp. 1977), repealed by Acts of 1979, P.L. 235, § 2, effective April 6, 1979, current provision at § 23-2-3.1-10 (Supp. 1979). Neither model was followed in Massachusetts.

The legislative history of the Massachusetts statute does not help. The original bill contained a cross-reference to G. L. c. 110A, § 410 (*h*), which could have been read to negate the creation of any implied cause of action. 1976 Sen. Doc. No. 69, § 8.[3] In the course of enactment the bill

---

[3] "An offeror is subject to the liabilities and penalties applicable to a seller, and an offeree is entitled to the remedies applicable to a purchaser, as set forth in sections 408 to 411 inclusive, of Chapter 110A." General Laws, c. 110A, § 410 (*h*) provides, "The rights and remedies provided by this chapter are in addition to any other rights or remedies that may exist at law or in equity, *but this chapter does not create any cause of action not specified in this section*" (emphasis supplied).

was entirely rewritten; the cross-reference disappeared, but a portion of G. L. c. 110A, § 410 (h), became G. L. c. 110C, § 9 (d), of the statute as enacted: "The rights and remedies under this chapter are in addition to any rights or remedies that may exist at law or in equity." We are unable to find in this history any clear legislative intention as to the creation by implication of new causes of action.

It is obviously desirable that some procedure be available to decide whether there has been such a "tender offer" as to require a filing under the Massachusetts statute, and it seems clear enough that § 9 (e) of c. 110C authorizes the State Secretary to bring an action for an injunction in such a case. It is less clear that there is need for a private action by a target company to the same end, particularly if the target company has available to it a Federal remedy to achieve the same practical result. See *Wellman* v. *Dickinson*, 475 F. Supp. 783, 817-826 (S.D.N.Y. 1979), for an adjudication, in an action by a target company, that there had been a "tender offer" under the Williams Act. "The hidden question is one of policy with respect to suit by the corporation: Should management be allowed to spend the stockholders' money in resisting a tender offer that may well be advantageous and acceptable to a large majority when a stockholder is free to act in his own behalf and the managers will almost inevitably hold stock on their own account?" *Electronic Specialty Co.* v. *International Controls Corp.*, 409 F.2d 937, 946 (2d Cir. 1969).

Our Legislature appears to have struck the balance in favor of disregarding this inherent conflict of interest between the management and the stockholders of the target company once there has been a statutory filing, at least to the extent of authorizing a request by the target company for a hearing before the State Secretary. Cf. *A.S.G. Indus., Inc.* v. *MLZ, Inc.*, 4 Del. J. Corp. L. 282, 285 (Del. Ch. 1978) (action by target company under Delaware statute, which has no administrative provisions). The present action involves a further step. The stated purpose is "in part, to protect shareholders of corporations organized under the

laws of the commonwealth or having principal places of business within the commonwealth." St. 1976, c. 121, emergency preamble. But the Massachusetts statute, like other State takeover statutes, gives target companies the ability to delay the commencement of an offer and thus increases a target company's ability to defeat a tender offer. "To a large extent, it seems fair to say, these state statutes substitute an antitakeover philosophy for the neutrality emphasized by Congress in 1968 and 1970." ALI Federal Securities Code § 607 Note (2) (Proposed Official Draft 1978). Departure from "neutrality" is one of the principal grounds for arguing that the State statutes are preempted by the Williams Act. See *Great Western United Corp.* v. *Kidwell*, 577 F.2d 1256, 1276-1281 (5th Cir. 1978), rev'd on other grounds sub nom. *Leroy* v. *Great Western United Corp.*, 443 U.S. 173 (1979). It seems clear that allowance of the remedy sought in the present case would add to the departure from "neutrality" and thus to the danger that the State statute would be invalid.

In these circumstances we think that if the remedy now sought is to be added to the target company's arsenal it must be done by legislation. Accordingly, we answer in the negative the first question certified to us. In view of that answer, we are not required to answer the second question. The Reporter of Decisions and the clerk of this court are to follow the procedures set out in *Hein-Werner Corp.* v. *Jackson Indus., Inc.*, 364 Mass. 523, 530-531 (1974), for furnishing copies of this opinion and transmitting them.

*So ordered.*