Troy, Paul E., J.
This action arises out of a police investigation of and the initiation of a criminal complaint against the pro-se plaintiff, Lawrence N. Mirsky (“Mirsky”). In 2007 and 2008, Detective Kathryn L. Barkas (“Barkas”) of the Quincy Police Department (“Quincy Police”) investigated thirty-nine-year-old Mirsky for allegedly criminally harassing a seventeen-year-old female who worked at a grocery store near Mirsky’s home. Detective Timothy V. Cohoon (“Cohoon”) of the Braintree Police Department became involved in Barkas’s investigation in late 2007. The investigation eventually resulted in a criminal harassment charge against Mirsky, which was resolved by a continuance without a finding.
Mirsky now asserts the following claims: (1) defamation/slander, against Barkas (Count I); (2) violation of G.L.c. 4, §7, clause 26, against Barkas and the Quincy Police (Count II); (3) violation of G.L.c. 66, §10, against Barkas and the Quincy Police (Count III); (4) filing a false police report, against Barkas (Count IV); (5) abuse of process, against Barkas and Cohoon (Count V); (6) conspiracy to deprive Mirsky of his Second Amendment rights, against Barkas and Cohoon (Count VI); (7) conspiracy to convict using false evidence, against Barkas and Cohoon (Count VII); (8) violation of G.L.c. 140, §129D, against the Quincy Police and the City of Quincy (“City”) (Count VIII); (9) violation of G.L.c. 12, §111, against Barkas and Cohoon (Count IX); and (10) violation of G.L.c. 265, §37, against Barkas and Cohoon (Count X). The action is now before the court on the motions to dismiss of Barkas, the Quincy Police, and the City (collectively, “Quincy defendants”) and of Cohoon. For the reasons that follow, the Quincy defendants’ motion to dismiss is ALLOWED, and Cohoon’s motion to dismiss is ALLOWED.
BACKGROUND
The facts which are alleged by Mirsky in his amended complaint are as follows. At the time of the events at issue, Mirsky was thirty-nine years old, living in Quincy, Massachusetts, and working in banking. Mirsky collected antique guns and had a valid license to carry from the Quincy Police. He never openly *385 carried a firearm and no one but the police knew of his collection of firearms or his license to carry, both of which he kept secret.
Mirsky frequented a Roche Bros, grocery store located approximately two hundred yards from his apartment in Quincy. He visited the store three or four times a week. Mirsky became friendly with various Roche Bros, employees, including seventeen-year-old A.V., a cashier/product demonstrator, who welcomed and sought out interaction with Mirsky.[2] Mirsky understood that A.V. was too young to date and he never associated with her outside the grocery store. Unbeknownst to Mirsky at the beginning of the events herein repeated, A.V. lived around the comer from him.
Beginning in March 2007, A.V.’s behavior changed— she appeared jumpy and behaved erratically when Mirsky saw her at Roche Bros. On March 4, 2007, it appeared to Mirsky that A.V. took down his license plate number with pen and paper as he drove away from the store. On April 6,2007, Barkas took a police report from A.V. in which the latter stated that Mirsky would talk to her for hours in Roche Bros., which made her nervous. She made it clear, however, that Mirsky had never acted improperly towards her. Based on this report, Barkas asked Roche Bros, management to issue a trespass notice against Mirsky to protect A.V.’s safety. At some later time, Barkas gave management a copy of the April 6, 2007 police report, which included information about Mirsky’s license to carry.
On April 6, 2007, after Barkas had taken A.V.’s report and asked Roche Bros, to issue a trespass notice against Mirsky, Mirsky entered the grocery store. Upon seeing Mirsky, a female department manager showed a look of terror. She called over the loudspeaker for the store manager. Mirsky, seeing the woman tremble, decided to leave the store. On the way out, he passed by the store manager, who appeared too afraid to approach him. Later the same day, as Mirsky was walking home from dropping off several letters at Roche Bros., Barkas and her partner, James Lencki (“Lencki”), confronted him. Barkas told Mirsky that she had thoroughly looked into his background, including a 2001 incident with another girl. She also told him that he was banned from all Roche Bros, stores, when in truth he was only banned from the Quincy store. Mirsky walked away from the two officers when Lencki loudly called him a “kook.”
On April 9, 2007, Barkas and Lencki intended to seize Mirsky’s firearms after their supervisor had signed a letter revoking his license to carry. They first spent time at the home of A.V.’s family, waiting for Mirsky to leave work. When Lencki called Mirsky’s office phone to determine whether Mirsky was still at work, he inadvertently left a voicemail on Mirsky’s phone. On the voicemail, Barkas could be heard talking on the phone at A.V.’s family’s home. She stated, “Yep we caught the ‘perp’ earlier, we got him, now we’re going to get the perris guns.” When Mirsky returned home from work on April 9, 2007, Barkas and Lencki blocked in his car. Barkas yelled, “Hey Larry! Remember us!” and “We’re here for your guns! You’re going to let us in, or we’re coming back with a warrant!” Mirsky, believing that failure to comply with Barkas’s demands would lead to his arrest, let Barkas, Lencki, and other officers into his apartment so they could search for and seize his firearms. When Mirsky asked Lencki how he could have his firearms returned, the officer told him, ‘You can’t. I know it’s the chiefs policy to never return guns. These are going to be sold or destroyed. But maybe you can talk to him.” About a month after the Quincy Police seized his firearms, while Mirsky was struck in traffic in front of Roche Bros., a stock boy laughed and made a handgun sign at him.
Mirsky obtained judicial review of the Quincy Police’s revocation of his license to carry on May 9, 2007, resulting in the Quincy Police returning his firearms and reinstating his license to carry.
Mirsky next approached Roche Bros, management in an attempt to have the trespass notice rescinded. Each level of management informed Mirsky that Barkas had told them repeatedly that he was a threat to A.V.’s safety and should not be allowed in the store under any circumstances. Eventually, Mirsky ceased attempting to come to an understanding with Roche Bros, after the executive vice president stated that the store would not ignore the Quincy Police’s “strong recommendations.”
Over the next few months, Mirsky had several run-ins with A.V. and her boyfriend, who appeared to follow Mirsky home and to the South Shore Plaza mall in Braintree, Massachusetts on separate occasions. After the latter encounter—during which Mirsky observed Barkas at the mall—A.V. and her boyfriend filed a false police report indicating that Mirsky had followed A.V. to her boyfriend’s store at the mall.
Between December 3 and December 7,2007, someone damaged A.V.’s car. The damage was blamed on Mirsky, and Barkas took a police report from A.V. on December 10, 2007. The report alleged criminal harassment based on A.V.’s car, the mall incident, and numerous sightings A.V. had of Mirsky while he walked in the neighborhood the two shared. Barkas then coordinated with Cohoon of the Braintree Police Department. He created a December 13, 2007 police report based on Barkas’s December 10, 2007 report, inflating the number of times A.V. had seen Mirsky. Cohoon did this to aid Barkas at Mirsky’s expense.
Based mostly on Cohoon’s December 13, 2007 police report, Mirsky appeared at a clerk magistrate hearing on February 12, 2008. After the clerk magistrate questioned Mirsky, he or she continued the charges for six years.[3]
On March 7, 2008, Mirsky was alone at a Quincy bar when Cohoon and another Braintree Police Department *386 detective approached him. Cohoon appeared inebriated and attempted to draw Mirsky into a physical confrontation. After Mirsky distracted Cohoon with a statement about how Mirsky’s case was suspicious and being investigated, Mirsky left the bar for his own safety.
After A.V. reported seeing Mirsky drive down her street twice in the span of five days in late November and early December 2008, Mirsky was arrested on December 2, 2008 and charged with criminal harassment the next day. The court agreed to release Mirsky on his own recognizance if he surrendered all the firearms he possessed. Mirsky did so, also surrendering numerous firearm-related items not subject to his license to cany. To avoid a trial with false testimony and the consequences of a guilty plea, Mirsky accepted a Continuance Without a Finding (“CWOF”) on the criminal harassment charge.
Subsequently, pursuant to G.L.c. 140, § 129D, Mirsky attempted to have the almost $11,000 in firearms and related property that the Quincy Police seized from him transferred to his brother, a licensed firearms dealer in New York. In November 2009, Mirsky learned that the Quincy Police had improperly disposed of his property due to Barkas’s paperwork error.
DISCUSSION
I. Motion to Dismiss Standard
When evaluating the legal sufficiency of a complaint pursuant to Mass.RCiv.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
II. Analysis[4],[5]
A. Count I: defamation/slander (against Barkas);
Count V; abuse of process (against Barkas and Cohoon);
Count VI; conspiracy to deprive Mirsky of his Second Amendment rights (against Barkas and Cohoon);
Count VII: conspiracy to convict using false evidence (against Barkas and Cohoon)
The defendants assert various arguments in opposition to Count I, Count V, Count VI, and Count VII. They do not, however, raise the key argument regarding these claims: the effect of the Massachusetts Tort Claims Act (“MTCA”), G.L.c. 258. Given the absolute bar the MTCA presents, the court raises it sua sponte.
General Laws c. 258, §10 (c) bars intentional tort claims asserted against public employees acting in their official capacity. See Saxonis v. Lynn, 62 Mass.App.Ct. 916, 918 (2004) (public employee sued in official capacity for intentional tort immune under G.L.c. 258, § 10(c)), review denied, 443 Mass. 1104 (2005), cert. denied, 546 U.S. 819 (2005); Howcroft v. Peabody, 51 Mass.App.Ct. 573, 596 (2001) (affirming dismissal, under G.L.c. 258, §10(c), of intentional infliction of emotional distress claim against public employee sued in official capacity); see also Nelson v. Salem State College, 446 Mass. 525, 537 n.9 (2006) (plaintiff conceded immunity under G.L.c. 258, §10(c), of public employees sued for intentional tort in official capacities). Mirsky’s complaint clearly asserts Count I, Count V, Count VI, and Count VII against Barkas and Cohoon in their official capacities, as it includes their professional titles after their names in both the caption and the list of parties.
Section 10(c) specifically lists slander and abuse of process as excluded intentional tort claims. While not listed in § 10(c), conspiracy is nonetheless an intentional tort.[6] See Fiske v. North Attleboro, 2007 WL 809785 at *7 (Mass.Super. 2007) [22 Mass. L. Rptr. 242], rev’d on other grounds, 2008 WL 3913994 (Mass.App.Ct. 2008) (unpublished Rule 1:28 decision). Accordingly, regardless of the sufficiency of Mirsky’s factual allegations in Count I, CountV, Count VI, and Count VII, those counts must be dismissed pursuant to the MTCA.
B. Count III: violation of G.L.c. 66, §10 (against Barkas and the Quincy Police)
Mirsky alleges in Count III that Barkas revealed his license to carry firearms to A.V., her family, and Roche Bros, employees, thereby violating G.L.c. 66, §10. General Laws c. 66, § 10(d) provides the following:
[A]ny licensing authority, as defined by chapter one hundred and forty shall not disclose any records divulging or tending to divulge the names and addresses of persons who own or possess firearms, rifles, shotguns, machine guns and ammunition therefor, as defined in said chapter one hundred and forty and names and addresses of persons licensed to carry and/or possess the same to any person, firm, corporation, entity or agency except criminal justice agencies as defined in chapter six and except to the extent such information relates solely to the person making the request and is necessary to the official interests of the entity making the request.
Count III fails because G.L.c. 66, §10(d) does not apply to the situation that Mirsky alleges.
*387 General Laws c. 66 is the public records law, which “opens records made or kept by a broad array of governmental entities to public view.” Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 452-53 (2007); see also Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester, 436 Mass. 378, 382-83 (2002) (“The primary purpose of [the public records law] is to give the public broad access to governmental records”). The public records law applies only to situations where someone requests a public record from the keeper of that record. See G.L.c. 66, §10(a); Georgiou v. Commissioner of Dep’t of Indus. Accidents, 67 Mass.App.Ct. 428, 429-30 (2006) (attorneys requested public records from Department of Industrial Accidents under G.L.c. 66, §10). The language of G.L.c. 66, §10(d) suggests this, as it impliedly limits the section’s applicability to a “request,” i.e., a public records request. There has been no public records request here. The prohibitions in § 10(d) therefore do not apply to Barkas’s alleged divulgement of Mirsky’s license to carry, and there was no violation of the public records law.[7]
Count III must be dismissed for failure to state a claim upon which relief can be granted.
C. Count IV: filing a false police report (against Barkas)
Mirsky alleges in Count IV that Barkas permitted A.V. and A.V.’s boyfriend to file a false police report— which, along with their false testimony, led to Mirsky’s harassment charge—and also herself filed two police reports containing falsities. The Quincy defendants argue that because Mirsky accepted a CWOF, thereby admitting to the existence of facts sufficient for a guilty finding, he cannot now assert that the police reports were false. While the court disagrees with the Quincy defendants’ assertion, it nonetheless concludes that Count IV fails to state a colorable claim.
The court has been unable to find any Massachusetts case supporting a civil claim based on filing a false police report, and Mirsky has not cited to any such case. General Laws c. 268, §6A criminalizes false police reports, but this statute does not provide for a civil cause of action. A claim of misrepresentation could, perhaps, be based on the filing of a false police report. Here, however, there is no allegation that Barkas filed the three allegedly false police reports in order to induce Mirsky to act or refrain from acting. See Masingill v. EMC Corp., 449 Mass. 532, 540 (2007) (inducement is required element of misrepresentation claim).
Accordingly, because Mirsky cannot recover under any cognizable civil claim for Barkas’ alleged filing of false police reports, Count IV must be dismissed.
D. Count VIII: violation of G.L.c. 140, §129D (against the Quincy Police and the City)
Under Count VIII, Mirsky alleges that the Quincy Police and the Ciiy violated G.L.c. 140, §129D, which sets out the procedure for the surrender of firearms upon the revocation of a firearms identification card or license. The court concludes that Count VIII must be dismissed because G.L.c. 140, §129D does not provide a private cause of action.
Whether a statute creates a private cause of action is a matter of statutory construction. See Unitrode Corp. v. Dynamics Corp. of Am., 379 Mass. 487, 491 (1980). Courts “have generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference.” Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 544 (1998). Such indication will appear in the statutory language itself or the statute’s legislative history, if such history is available. See Borucki v. Ryan, 407 Mass. 1009, 1009-10(1990); Unitrode Corp., 379 Mass. at 491B492.
Here, there is nothing in the language of G.L.c. 140, §129D that indicates a legislative intent to provide a private cause of action. The statute merely states that one whose firearms identification card or firearms license has been revoked, suspended, or denied must surrender his firearms immediately to the local licensing authority. It then provides for several means of disposing of the surrendered firearms by the licensing authority. That is the extent of §129D’s provisions. There is no mention of recourse to judicial review if the licensing authority does not follow the statutoiy procedures. The statutory language therefore does not reflect that the Legislature intended to create a private cause of action for violations of §129D. See Borucki, 407 Mass. at 1009 & n.1 (no private cause of action where district attorney publicly discussed report on plaintiffs criminal responsibility because statute only provided that such reports are private but contained no language regarding a private cause of action); see also Sterilite Corp. v. Continental Cas. Co., 20 Mass.App.Ct. 215, 217-18 (1985), rev’d on other grounds, 397 Mass. 837 (1986) (“[W]here the language of a statute is plain there is no room for speculation as to its meaning or its implication. The Legislature must be presumed to have meant what the words plainly say . . .”). Compare G.L.c. 214, §1B (providing for jurisdiction of Superior Court to enforce individual’s privacy rights and award damages).
While the court could not locate any legislative histoiy that suggested the purpose behind G.L.c. 140, §129D—which could have revealed a legislative intent or lack thereof to create a private cause of action, see Borucki, 407 Mass. at 1009-10—it notes that G.L.c. 140, §§ 129B-129D were all enacted as part of the same bill. See St. 1968, c. 737, §7. Section 129B explicitly provides for judicial review of the revocation, suspension, or denial of an applicant’s or holder’s firearms identification card. That the Legislature provided for judicial review in §129B but no judicial recourse in §129D suggests that it deliberately chose not to provide individuals with a private cause of action for *388 violations of §129D. See Commonwealth v. Caracciola, 409 Mass. 648, 653 n.8 (1991) (principles ofstatutoiy construction include “the rule that where the Legislature has employed specific language in one [clause], but not in another, the language should not be implied where it is not present”).
Accordingly, Mirsky may not assert a claim under G.L.c. 140, §129D, and Count VIII must therefore be dismissed for failure to state a claim upon which relief can be granted.
E. Count IX: violation of G.L.c. 12, §1II (against Barkas and Cohoon)
In Count IX, Mirsky alleges that Barkas threatened Mirsky with a warrant if he did not let her and Lencki into his apartment so they could seize his firearms. He further asserts that Barkas, during two seizures of his firearms, improperly deprived him of several items of personal property that do not require a firearms license. Mirsky also alleges that Cohoon attempted to entice him into a physical confrontation at a bar, and that Mirsky left the bar for his own safety.
Under G.L.c. 12, §§1 II and 11H, the Massachusetts Civil Rights Act (“MCRA”), any person whose rights, as secured by the United States or Massachusetts Constitutions, have been interfered with by threats, intimidation, or coercion, may bring a civil action in his own name for relief. This conduct is defined as follows:
“(A t]hreat” . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. “Intimidation” involves putting in fear for the purpose of compelling or deterring conduct. . . [Coercion involves] “the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.”
Reproductive Rights Network v. President of Univ. of Mass., 45 Mass.App.Ct. 495, 505 (1998). “Evidence of ‘threats, intimidation, or coercion’ is to be measured by an objective standard, not the state of mind of the person threatened.” Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass.App.Ct. 86, 92 (1999)
Barkas’s conduct does not arise to the requisite level of threats, intimidation, or coercion. While a police officer’s statement that she would return with a warrant may be a threat, generally “a threat to use lawful means to reach an intended result is not actionable under Section 111.” Sena v. Commonwealth, 417 Mass. 250, 263 (1994); see also Buster v. George W. Moore, Inc., 438 Mass. 635, 648 (2003). Barkas’s improper seizure of items not subject to Mirsky’s firearms license may have unconstitutionally deprived Mirsky of his property, but there is no allegation that Barkas seized this properly via threats, intimidation, or coercion. See Rosenfeld v. Board of Health of Chilmark, 27 Mass.App.Ct. 621, (1989) (“Since the complaint fails to allege any conduct by anyone that could be considered a ’threat, intimidation or coercion,’ it fails to state a claim under the [MCRA]”). Mirsky’s MCRA claim against Barkas therefore fails.
His MCRA claim against Cohoon also fails. Mirsky sufficiently alleges that Cohoon intimidated him— Mirsky asserts that when faced with a physical confrontation with Cohoon, he left the bar for his own safety—but fails to allege that Cohoon intimidated him in order to compel or deter conduct. See Reproductive Rights Network, 45 Mass.App.Ct. at 505 (defining intimidation). Even if Cohoon’s alleged conduct satisfied the definition of intimidation, there is no indication in the complaint that Cohoon’s conduct interfered with any of Mirsky’s constitutional rights, the remedy of which is the purpose of the MCRA. See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822 (1985) (“The Legislature enacted G.L.c. 12, Sections 11H and 111, to provide a State remedy for deprivations of civil rights”).
Count IX will be dismissed for failure to state a claim.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Quincy defendants’ motion to dismiss be ALLOWED, and that Cohoon’s motion to dismiss be ALLOWED.

According to the complaint, the terms of Mirsky’s Continuance Without a Finding bar him from using A.V.’s full name.

The complaint does not state what charges Mirsky faced at the hearing, but presumably they have to do with criminal harassment.

Mirsky acknowledges in his memorandum in opposition to the Quincy defendants’ motion to dismiss that Count II (violation of G.L.c. 4, §7, clause 26) and Count X (violation of G.L.c. 265, §37) fail to state claims upon which relief can be granted. Accordingly, those claims must be dismissed pursuant to Mass.R.Civ.P. 12(b)(6).

The Quincy defendants assert that Mirsky’s complaint should be dismissed for failure to comply with Mass.R.Civ.P. 8, which requires that a complaint contain “a short and plain statement of the claim showing that the pleader is entitled to relief,” Mass.R.Civ.P. 8(a), and that “[e]ach averment of a pleading shall be simple, concise, and direct,” Mass.R.Civ.P. 8(e)(1). Mirsky’s complaint is rather lengthy at twenty-four pages long, and it contains more than seventy paragraphs. Given that it includes ten counts against several different defendants, however, the complaint is not egregiously lengthy, nor does it fail to give adequate notice to the defendants of Mirsky’s claims. See Mmoe v. Commonwealth, 393 Mass. 617, 621 (1985). The court, in its discretion, declines to dismiss Mirsky’s complaint for failing to comply with Mass.R.Civ.P. 8. See id. (“Dismissal of a complaint for failure to meet the pleading requirements of rule 8 is, as rule 41(b) (2) provides, a matter of discretion for the judge”).

Under Count VI and Count VII, Cohoon and Mirsky both make arguments regarding 42 U.S.C. §§1983 and 1985. Mirsky does not cite either of those statutes anywhere in his complaint, however, leading the court to conclude that Mirsky’s conspiracy claims are of the common-law variety, so the court need not deal with the federal statutes.

In his opposition to the Quincy defendants’ motion to dismiss, Mirsky states in regards to Count III that, “As Barkas breached a duty of care owed to the Plaintiff she is liable for damages.” While this is the language of negligence, Count III is not a negligence claim. Nowhere in the allegations under Count III—or those under Count II, which Mirsky also brought under the public records law—does Mirsky make any mention of a negligence theory.